1  J. REED CLAY, JR.
   Trial Attorney
2  PETER D. KEISLER
   Assistant Attorney General
3  J. CHRISTOPHER KOHN
   TRACY J. WHITAKER
4  1100 L Street NW
   Rm. 10038
5  Washington, DC 20005
   (202) 307-0958
6
   Corporate / Financial Litigation Section
7  Commercial Litigation Branch
   Civil Division
8  U.S. Department of Justice
   P.O. Box 875
9  Ben Franklin Station
   Washington, DC 20044
10
   Attorneys for:
11 UNITED STATES OF AMERICA

12              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF CALIFORNIA
13

14 In re:                          )   Case No. 06-00198-B7
                                   )   Adv. No. 06-90127-B7
                                   )
15 PAUL HUPP,                      )
                                   )   **UNITED STATES' OPPOSITION
                                   )   TO PLAINTIFF'S MOTION FOR
16         Debtor.                 )   SUMMARY JUDGMENT**
                                   )
17 _____ )
                                   )
18 PAUL HUPP,                      )
                                   )
19         Plaintiff,             )
                                   )
20 v.                              )
                                   )
21 EDUCATIONAL CREDIT              )
   MANAGEMENT CORPORATION,         )
22                                 )
           Defendant.             )
23 _____ )

24      TO THE HONORABLE PETER BOWIE, UNITED STATES BANKRUPTCY JUDGE,

25 PAUL HUPP ("Plaintiff") PRO SE, AND EDUCATIONAL CREDIT MANAGEMENT

26 CORPORATION ("Defendant"), BY TIMOTHY P. BURKE :

27      PLEASE TAKE NOTICE that on April 27, 2007, the United States of America hereby

28 files its Opposition to Plaintiff's Motion for Summary Judgment ("Opposition").   The

1  Opposition is based upon the facts and law as set forth in the Memorandum of Points and

2  Authorities, attached hereto.

3       WHEREFORE, the United States respectfully requests that this Court deny the Plaintiff's

4  motion for summary judgment and for such other and further relief as the Court deems just and

5  proper.

6

7  Dated: _____April 27, 2007_____

8                    By: _____/s/ J. Reed Clay, Jr._____

9                           J. REED CLAY, JR.
                            Trial Attorney

10                          PETER D. KEISLER
                            Assistant Attorney General

11                          J. CHRISTOPHER KOHN
                            TRACY J. WHITAKER

12                          Attorneys for:
                            The UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  J. REED CLAY, JR.
   Trial Attorney
2  PETER D. KEISLER
   Assistant Attorney General
3  J. CHRISTOPHER KOHN
   TRACY J. WHITAKER
4  1100 L Street NW
   Rm. 10038
5  Washington, DC 20005
   (202) 307-0958
6
   Corporate / Financial Litigation Section
7  Commercial Litigation Branch
   Civil Division
8  U.S. Department of Justice
   P.O. Box 875
9  Ben Franklin Station
   Washington, DC 20044
10
   Attorneys for:
11 UNITED STATES OF AMERICA

12              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF CALIFORNIA
13
   In re:                          )    Case No. 06-00198-B7
14                                 )    Adv. No. 06-90127-B7
   PAUL HUPP,                      )
15                                 )
                 Debtor.           )    MEMORANDUM OF POINTS AND
16                                 )    AUTHORITIES IN SUPPORT OF
                                   )    UNITED STATES' OPPOSITION TO
17                                 )    PLAINTIFF'S MOTION FOR
                                   )    SUMMARY JUDGMENT
18 _____)
   PAUL HUPP,                      )
19                                 )
                 Plaintiff,        )
20                                 )
   v.                              )
21                                 )
   EDUCATIONAL CREDIT              )
22 MANAGEMENT CORPORATION,         )
                                   )
23               Defendant.        )
   _____)
24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................ ii

MEMORANDUM ..................................................... 1

STATEMENT OF FACTS ............................................. 1

ARGUMENT .......................................................... 2

I.    Section 523(a)(8) does not violate the Equal Protection or Substantive Due Process guarantees of the Fifth Amendment. ...................................... 2

    (a)    "Rational Basis" review applies. ................................... 2

        (i)    Section 523(a)(8) does not infringe a fundamental constitutional right. . 2
        (ii)   Section 523(a)(8) does not make an invidious classification of a suspect class. ....................................................... 3

    (b)    Section 523(a)(8) is rationally related to a legitimate interest. .............. 5

II.   Section 523(a)(8) does not violate the Procedural Due Process guarantees of the Fifth Amendment. ...................................................... 6

III.  Section 523(a)(8) is not unconstitutional retroactive legislation. ................... 9

    (a)    Section 523(a)(8) is not retroactive as applied to the debtor. ............... 9

    (b)    To the extent that section 523(a)(8) is retroactive, it does not violate the Ex Post Facto Clause, the Contracts Clause or the Due Process Clause. ........ 10

IV.   The imposition of collection costs (and other fees or penalties associated with default) does not violate the Eighth Amendment. .................................. 12

CONCLUSION ...................................................... 15

i

# TABLE OF AUTHORITIES

## CASES

In re Ahrendt,
    28 B.R. 329 (Bankr. E.D. Wis. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Andrews,
    661 F.2d 702 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Austin v. United States,
    509 U.S. 602 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Black v. Educational Credit Management Corp.,
    459 F.3d 796 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Boddie v. Connecticut,
    401 U.S. 371 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7, 8

Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,
    492 U.S. 257 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cox Cable Communications, Inc. v. United States,
    992 F.2d 1178 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dandridge v. Williams,
    397 U.S. 471 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Dodge v. Board of Education,
    302 U.S. 74 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

FCC v. Beach Communications, Inc.,
    508 U.S. 307 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Matter of Flamini,
    19 B.R. 303 (Bankr. E.D. Mich. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gideon v. Wainwright,
    372 U.S. 335 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Goldberg v. Kelly,
    397 U.S. 254 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Griffin v. Illinois,
    351 U.S. 12 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Harris v. McRae,
    448 U.S. 297 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hudson County Welfare Dep't. v. Roedel,
    34 B.R. 689 (D.N.J. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 9

Ivey v. Board of Regents of University of Alaska,
   673 F.2d 266 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Kadrmas v. Dickinson Public Schools,
   487 U.S. 450 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5

Landgraf v. USI Film Products,
   511 U.S. 244 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

M.L.B. v. S.L.J.,
   519 U.S. 102 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

In re Merchant,
   958 F.2d 738 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Morris,
   21 B.R. 816 (Bankr. N.D. Iowa 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

National Railroad Passenger Corp. v. Atchison, Topeka and Santa Fe Railway Co.,
   470 U.S. 451 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ortwein v. Schwab,
   410 U.S. 656 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

In re Pelkowski,
   990 F.2d 737 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rodriguez v. Cook,
   169 F.3d 1176 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Romer v. Evans,
   517 U.S. 620 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

Royal v. Doe,
   19 Fed. Appx. 455 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

San Antonio Indep. School Dist. v. Rodriguez,
   411 U.S. 1 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Shapiro v. Thompson,
   394 U.S. 618 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Sibley v. Dep't of Education,
   913 F. Supp. 1181 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Smith v. Doe,
   538 U.S. 84 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Solem v. Helm,
   463 U.S. 277 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Taylor v. Cisneros,
    913 F. Supp. 314 (D.N.J. 1995) .......................................... 12, 13

United States v. Bajakajian,
    524 U.S. 321 (1998) ...................................................... 14

United States v. Halper,
    490 U.S. 435 (1989) ...................................................... 12

United States v. Hudson,
    14 F.3d 536 (10th Cir. 1994) ............................................. 12

United States v. Kras,
    409 U.S. 434 (1973) ................................................. 2, 6, 7, 8

Usery v. Turner Elkhorn Mining, Co.,
    428 U.S. 1 (1976) ........................................................ 11

Windsor v. McVeigh,
    93 U.S. 274 (1876) ....................................................... 3

**STATUTES**

11 U.S.C. § 523 ......................................................... passim

20 U.S.C. § 1091a ...................................................... 12, 13

28 U.S.C. § 2403 .......................................................... 1

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 ............. 5

Education Amendments of 1976, Pub. L. No. 94-482, § 127(a), 90 Stat. 2081 .......... 9

U.S. Const. Art 1, § 10, cl. 1 ............................................ 11

**REGULATIONS**

34 C.F.R. § 682.208 ....................................................... 8

34 C.F.R. § 682.209 ....................................................... 8

34 C.F.R. § 682.210 ....................................................... 8

34 C.F.R. § 682.211 ....................................................... 8

34 C.F.R. § 682.405 ....................................................... 8

34 C.F.R. § 682.410 ................................................. 12, 13, 14

-iv-

1                    **LEGISLATIVE MATERIALS**

2    Comm'n on the Bankruptcy Laws of the United States, Report, H.R. Doc. No. 93-137 . . . . . . . 3

3    H.R. Rep. No. 99-383, at 41 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4                    **SECONDARY SOURCES**

5    Charles B. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation,
         73 Harv. L. Rev. 692, 692 (1960)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6

7    COLLIER ON BANKRUPTCY § 523.14 (Alan J. Resnick & Henry J. Sommer eds., 15th ed. 2006)
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM

The United States of America submits this Memorandum of Points and Authorities in support of its Opposition to Plaintiff's Motion for Summary Judgment. This Memorandum demonstrates that § 523(a)(8) of the Bankruptcy Code is valid and constitutional. In particular, section 523(a)(8) does not violate the (i) the Fifth Amendment's guarantees of Due Process and Equal Protection; (ii) any of the Constitution's limited restrictions on retroactive legislation, or (iii) the Eight Amendment's ban on excessive fines.[1]

# STATEMENT OF FACTS

This adversary proceeding concerns the dischargeability of student loan debt the debtor acquired between 1986 and 1988, under the Federal Family Educational Loans ("FFEL") program. His three loans were consolidated in 1991. Debtor's Memorandum at 2. Under the program, the debtor asked for and received forbearance and deferment of the loans beginning in 1987, and lasting until 1998. Id. After 12 years with little service to the debt, the loan went into default in January of 1998. Id. Once in default, Educational Credit Management Corporation (a "Guaranty Agency") assumed the loan under the terms of the FFEL. See Affidavit of Lola Hom at 1-2. After it assumes a loan, a Guaranty Agency is required to collect the debt from the borrower. Id. at 2. On February 8, 2006, Paul Hupp filed his petition for bankruptcy and commenced this adversary proceeding to determine the dischargeability of his student loan debt. Debtor's Memorandum at 1. According to the debtor, the balance due on the loan approximates $70,000. Id. at 11.

---

[1] By Order dated April 24, 2007, the Court granted the government's motion to intervene pursuant to 28 U.S.C. § 2403(a) to defend the constitutionality of § 523(a)(8) of the Bankruptcy Code. The United States presents no argument on whether the debtor's debt should be discharged on the merits under the "undue hardship" exception of § 523(a)(8).

-1-

# ARGUMENT

## I.

### Section 523(a)(8) does not violate the Equal Protection or Substantive Due Process guarantees of the Fifth Amendment.

(a)    "Rational Basis" review applies.

The debtor wrongly argues that § 523(a)(8) violates the Equal Protection and Substantive Due Process components of the Fifth Amendment.  When considering such constitutional challenges, courts apply a "rational basis" review where the statute neither infringes upon a fundamental constitutional right nor makes an invidious classification of a suspect class.[2]  See Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 457-58 (1988); Romer v. Evans, 517 U.S. 620, 631 (1996).  Section 523(a)(8), as applied to the debtor, neither infringes upon a fundamental constitutional right nor makes an invidious classification of a suspect class.  Thus, this Court must review the debtor's challenge using a "rational basis" review.

(i)    Section 523(a)(8) does not infringe a fundamental constitutional right.

Section 523(a)(8) excepts student loan debt from discharge unless doing so would cause "undue hardship" to the debtor and his dependents.  Thus, for certain debtors, the *statutorily* granted right to a discharge is limited.  But, the right to a discharge is not a fundamental constitutional right.  United States v. Kras, 409 U.S. 434, 446 (1973) (holding that "[t]here is no constitutional right to obtain a discharge of one's debts"); Hudson County Welfare Dep't. v. Roedel, 34 B.R. 689, 694 (D.N.J. 1983) ("*A fortiori*, he has no right to discharge of a specific obligation.").

The debtor incorrectly argues that § 523(a)(8), and the adversary proceeding that is required to determine the dischargeability of his student loan debt, infringe his "constitutional" right to the basic necessities of life.  But, the right to the basic necessities of life is not a

---

[2] When reviewing a statute under the Substantive Due Process component of the Fifth Amendment, courts inquire first into whether the statute infringes upon a fundamental constitutional right.  If it does not, the "rational basis" standard applies.

1   fundamental constitutional right. See Dandridge v. Williams, 397 U.S. 471, 485 (1970) (finding

2   no basis to apply heightened scrutiny to state regulations that affect "the most basic economic

3   needs of impoverished human beings"). In any event, whether § 523(a)(8) would infringe upon

4   any such putative right is dubious. The very purpose of the "undue hardship" exemption is to

5   ensure that those who truly cannot subsist if their student loan debt is not discharged *can* receive

6   a discharge. See COLLIER ON BANKRUPTCY § 523.14 (Alan J. Resnick & Henry J. Sommer eds.,

7   15th ed. 2006); Comm'n on the Bankruptcy Laws of the United States, Report, H.R. Doc. No.

8   93-137, pt. II, at 140-41 n.17 (1973) ("The total amount of income, its reliability, and the

9   periodicity of its receipt should be adequate to maintain the debtor and (the debtor's) dependents,

10  at a minimal standard of living within their management capability, as well as to pay the

11  educational debt."), quoted in In re Andrews, 661 F.2d 702, 704 (8th Cir. 1981). In other words,

12  § 523(a)(8) honors the very "right" the debtor claims it violates.

13          The debtor also argues that the bankruptcy courts monopolize the process for discharging

14  his student loan debt. When expressed in these terms, the real tenor of the debtor's claim

15  seemingly is that he is being deprived of his right of access to the courts. But, access to the

16  courts is not absolute. See Boddie v. Connecticut, 401 U.S. 371, 378-79 (1971). Traditionally,

17  access to the judicial system is protected for those who are *forced* to settle their disputes through

18  the judicial process. See id. at 377 (citing Windsor v. McVeigh, 93 U.S. 274, 277 (1876)).

19  Thus, where private mechanisms for the structuring (and restructuring) of the relationships of

20  private parties are in place, an individual's access to the judicial system receives less protection.

21  See id. at 375-76; *infra* note 4.

22

23          (ii)    Section 523(a)(8) does not make an invidious classification of a suspect class.

24          As the debtor has acknowledged, "Title 11 U.S.C. § 523(a)(8) facially treats student loan

25  debtors substantially different from all other debtor's [sic] by making them meet the 'undue

26  hardship' standard before discharge . . . ." Debtor's Memorandum at 26. But, student loan

27

28                                              -3-

1    debtors are not a suspect class. See San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1,

2    28 (1973) (identifying the traditional indicia of a suspect class); Sibley v. Dep't of Education,

3    913 F. Supp. 1181, 1189 (N.D. Ill. 1995) (finding constitutional a statute allowing government

4    agencies to deduct pay accounts of its employees who are indebted to the United States and

5    stating that federal employees are not a suspect class). Nor are the poor or indigent a suspect

6    class.[3] Kadrmas, 487 U.S. at 458; Harris v. McRae, 448 U.S. 297, 322-23 (1980); Ortwein v.

7    Schwab, 410 U.S. 656, 660 (1973); see also Rodriguez v. Cook, 169 F.3d 1176, 1179 (9th Cir.

8    1999).

9          The debtor argues that the Bankruptcy Code's failure to provide adequate procedural

10   safeguards to protect the rights of the indigent elevates the indigent to "suspect class" status.[4]

11   He cites no legal authority to support that contention and, indeed, no such authority exists.

12   According to the debtor, chief among the missing safeguards is one counteracting the inability of

13   the indigent to hire counsel. However, no constitutional right to counsel exists in civil actions.

14   See Royal v. Doe, 19 Fed. Appx. 455, 456 (8th Cir. 2001) (holding that "no statutory or

15   constitutional right to have counsel appointed" exists in civil cases); Ivey v. Board of Regents of

16   University of Alaska, 673 F.2d 266, 269 (9th Cir. 1982) ("There is no constitutional right to

17   appointed counsel for employment discrimination claims . . . ."). The cases cited by the debtor

18   are not on point.[5]

19

20   [3] The debtor's reliance on Shapiro v. Thompson, 394 U.S. 618 (1969), is misplaced. There, the Supreme
     Court considered the constitutionality of several states' statutory provisions that required applicants to have been
21   state residents for one year before receiving welfare benefits. The Court did find that the statutory provisions
     violated the Equal Protection clause of the Fourteenth Amendment, but the welfare recipients' indigent status did not
22   trigger strict scrutiny. Instead, the Court applied strict scrutiny because it interfered with the new residents'
     fundamental right to interstate travel. See id. at 629-30.

23
     [4] The debtor likely conflates his equal protection claim with his procedural due process claim. Indeed, the
24   case cited by the debtor, Goldberg v. Kelly, 397 U.S. 254 (1970), was decided on due process grounds.

25   [5] The debtor cites to Gideon v. Wainwright, 372 U.S. 335 (1963), and Griffin v. Illinois, 351 U.S. 12
     (1956). Gideon stands for the limited proposition that a State must provide trial counsel for an indigent person
26   charged with a felony. Gideon, 372 U.S. at 343-45. Griffin involves an Illinois rule that effectively precluded
     convicted persons from the appeals process who lacked the means to pay for the required trial transcript. Griffin,
27   351 U.S. at 18. Neither case holds that indigent debtors have a right to legal counsel in bankruptcy.

28                                           -4-

1    Thus, because § 523(a)(8) neither infringes a fundamental constitutional right nor makes

2    an invidious classification, this court must employ a "rational basis" review.

3        (b)    Section 523(a)(8) is rationally related to a legitimate interest.

4    When reviewing a constitutional challenge under "rational basis" review, courts defer

5    substantially to Congress, See Kadrmas, 487 U.S. at 457-58, and only require that the statute be

6    rationally related to a legitimate government interest, Romer, 517 U.S. at 631.  Thus, the heavy

7    burden of negating every conceivable rational basis falls upon the party challenging the statute.

8    FCC v. Beach Communications, Inc., 508 U.S. 307, 314-15 (1993).

9        Section 523(a)(8) is rationally related to a legitimate government interest.  Congress

10    included the section in the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549

11    (codified as amended at 11 U.S.C. §§ 101-1532 (2006)), because of the rising rate of defaults on,

12    and subsequent discharge of, student loan debts.  In re Pelkowski, 990 F.2d 737, 742 (3d Cir.

13    1993).  Thus, Congress made changes "to prevent abuses in and protect the solvency of the

14    educational loan programs."  In re Merchant, 958 F.2d 738, 742 (6th Cir. 1992); see also

15    Pelkowski, 990 F.2d at 743.  In essence, Congress legitimately determined that maintaining the

16    student loan program at the expense of making such loans nondischargeable outweighed an

17    individual's interest in a discharge through bankruptcy.  See id. at 744.  The federal student loan

18    program, which provides low-cost loans to students who frequently are not credit-worthy

19    borrowers, is intended to help make higher education financially feasible to all those who seek it.

20    With that in mind, Congress's decision to keep the federal student loan program solvent and thus

21    continue to open educational doors for needy students, while limiting an individual debtor's

22    statutory ability to obtain a discharge of those federally guaranteed student loans, is *eminently*

23    rational.

24

25

26

27

28                                          -5-

## II.

### Section 523(a)(8) does not violate the Procedural Due Process guarantees of the Fifth Amendment.

The debtor erroneously argues that § 523(a)(8) violates the procedural due process rights guaranteed by the Fifth Amendment by depriving him of meaningful access to the courts. While the Fifth Amendment protects the right of indigent litigants to access the civil legal system, those protections are reserved for the rare case that involves governmental control over or intrusion into family relationships. See M.L.B. v. S.L.J., 519 U.S. 102, 116 (1996). No such relationship is involved in this case. Indeed, the Supreme Court dismissed an argument almost identical to the one put forward by the debtor. See Kras, 409 U.S. 434.

In M.L.B., the Supreme Court engaged in a thorough review of the landmark decisions regarding the procedural due process rights of indigent litigants. 519 U.S. at 110-16. It stated that, in determining what, if any, due process is required in a given case, courts weigh "the character and intensity of the individual interest at stake, on the one hand, and the State's justification for its exaction, on the other." Id. at 120-21; see also Boddie, 401 U.S. at 380-81 (noting that indigent plaintiffs must be allowed to initiate divorce proceedings "in the absence of a sufficient countervailing justification for the State's action"). The Court noted that it had "recognized a *narrow* category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees." M.L.B., 519 U.S. at 113 (emphasis added). In particular, in cases "involving state controls or intrusions on *family relationships* . . . . the Court has examined closely and contextually the importance of the governmental interest advanced in defense of the intrusion." Id. at 116 (emphasis added).

The Bankruptcy Code's requirement that a debtor prove, through the adversary proceeding process, that his student loan debt should be discharged under § 523(a)(8) does not involve the state control of or intrusion on a family relationship. See Kras, 409 U.S. at 445 ("We see no *fundamental* interest that is gained or lost depending on the availability of a discharge in bankruptcy.") (emphasis added). Indeed, in Kras, the Supreme Court definitively answered the

-6-

1   procedural due process question raised by the debtor. See id. at 444-46 (holding constitutional

2   the payment of filing fees as a precondition to discharge). Specifically, the Court downplayed

3   the *character and intensity* of the debtor's "interest in the elimination of his debt burden." Id. at

4   445 ("If Kras is not discharged in bankrutpcy, his position will not be materially altered in any

5   constitutional sense."). The interest at stake for the debtor in Kras and the interest of the debtor

6   in this case are identical. The debtor's interest in the elimination of his student loan debt does

7   not rise to the level necessary to find a violation of his due process rights. See id. at 445; cf.

8   Hudson County, 34 B.R. at 694. The importance of maintaining the federal student loan

9   program outweighs the debtor's interest in having his student loan debt discharged.

10          The debtor's reliance on Boddie is misplaced. In Boddie, the Supreme Court considered

11   the constitutionality of the fees and costs imposed by Connecticut in connection with divorce

12   proceedings as applied to welfare recipients. Id. at 372. The Supreme Court emphasized both

13   the state control of and intrusion on a family relationship. First, it noted the importance and

14   "basic position of the marriage relationship in this society's hierarchy of values . . . ." Id. at 374.

15   Second, it reiterated that the Connecticut court system was *the only means available* for

16   obtaining a divorce. Id. This second factor was instrumental because, as the Supreme Court

17   noted, the judiciary's protection of the right of access to the court system has usually been

18   reserved for individuals who are forced to vindicate their rights in that forum. See id. at 375

19   ("Such litigation has, however, typically involved rights of defendants–not, as here, persons

20   seeking access to the judicial process in the first instance."). While Boddie did involve the right

21   of *plaintiffs* to access Connecticut's judicial system, the Supreme Court noted:

22          [r]esort to the judicial process by these plaintiffs is no more
             voluntary in a realistic sense than that of the defendant called upon
23          to defend his interests in court. For both groups this process is not
             only the paramount dispute-settlement technique, but, in fact, the
24          only available one.

25   Id. at 376-77. That these two coincidental factors were at the crux of the Court's decision has

26   been repeatedly emphasized. See, e.g., M.L.B., 519 U.S. at 113 (finding unconstitutional a

27

28                                                    -7-

1  Mississippi statute requiring an indigent woman to pay fees for the preparation of a record

2  required to appeal the termination of her parental rights); <u>Ortwein</u>, 410 U.S. at 658-59 (finding

3  constitutional Oregon appellate court filing fees as applied to indigents seeking review of State

4  welfare division's decision to reduce welfare payments); <u>Kras</u>, 409 U.S. at 443-44 (finding

5  constitutional bankruptcy filing fees as applied to an indigent debtor).

6       Neither factor present in <u>Boddie</u> exists here.  First, the Supreme Court has stated

7  categorically that the right to a discharge of one's debt does not rise to the level of the rights

8  receiving special protection under <u>Boddie</u> and its progeny.  <u>Kras</u>, 409 U.S. at 445-45 (finding

9  that a debtor's "interest in the elimination of his debt burden, and in obtaining his desired new

10 start in life . . . does not rise to the same constitutional level [as the interest of the plaintiffs in

11 <u>Boddie</u>]").

12      Second, "[n]or is the Government's control over the establishment, enforcement, or

13 dissolution of debts nearly so exclusive as . . . in *Boddie*."  <u>Kras</u>, 409 U.S. at 445 (noting that "a

14 debtor, in theory, and often in actuality, may adjust his debts by negotiated agreement with his

15 creditors").  Indeed, the regulations implementing the federal student loan program mandate that

16 lenders afford student loan borrowers several methods to restructure their debts.  These include

17 the ability to defer and forebear, 34 C.F.R. §§ 682.210, 682.211, the ability to negotiate and

18 choose from several different repayment plans, <u>see</u> 34 C.F.R. § 682.208; 34 C.F.R. § 682.209,

19 and the establishment of loan rehabilitation programs by guaranty agencies, 34 C.F.R. § 682.405.

20      Finally, the facts alleged by the debtor offer nothing more than a blanket assertion that

21 the adversary proceeding process is too expensive.  Thus, unlike the plaintiffs in <u>Boddie</u> and

22 <u>Kras</u>, Mr. Hupp has pointed to no *concrete* costs associated with the adversary proceeding

23 process that prevent an indigent person from litigating the dischargeability of his student loans.

24 But, even if he had, his argument would fail for the reasons discussed above.

25

26

27

28                                   -8-

## III.

**<u>Section 523(a)(8) is not unconstitutional retroactive legislation.</u>**

The debtor argues that the amendments to § 523(a)(8) in 1990 and 1998, retroactively affected his right to a discharge and are, therefore, unconstitutional. As originally enacted, § 523(a)(8) made student loan debt nondischargeable for a period of five years (excluding any period of time during which repayment was suspended) beginning on the date of the commencement of the repayment period. Education Amendments of 1976, Pub. L. No. 94-482, § 127(a), 90 Stat. 2081. In 1990, Congress changed the nondischargeability period from five years to seven years. In 1998, Congress changed the time period to an indefinite period of time. These changes, however, affected no vested right of the debtor. As such, the provisions are not retroactive as applied to him. Furthermore, even if the amendments did retroactively affect his rights, they do not violate the Constitution's limited restrictions on such legislation.

 (a) <u>Section 523(a)(8) is not retroactive as applied to the debtor.</u>

This case presents no issue of retroactivity. Retroactive legislation is legislation that "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . ." <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 269 (1994). In other words, the legislation must attach new *legal* significance to events that were completed before the passage of the legislation. <u>Id.</u> at 269-70. A statute is not retroactive merely because it upsets expectations based in prior law. <u>Id.</u> at 269.

The amendments to § 523(a)(8) altered no rights that had vested in the debtor. The debtor mistakenly concludes that the amendments to § 523(a)(8) altered his rights under the student loan agreements. The amendments did alter or change the rights granted under the Bankruptcy Code to *future* student loan debtors (such as Mr. Hupp) by limiting the dischargeability of student loan debt. But, the right to a discharge does not vest until the date of discharge. <u>Hudson County</u>, 34 B.R. at 694 ("Since the right to discharge is entirely a creation of

-9-

1   statute, a debtor who has not yet received his discharge under the statute has no vested right in

2   having the law remain as it was at the time he filed his petition.").[6]  In turn, the debtor's

3   derivative right to a discharge of his student loan debt does not vest until the discharge is

4   granted.[7]

5         The debtor urges this court to consider National Railroad Passenger Corp. v. Atchison,

6   Topeka and Santa Fe Railway Co., 470 U.S. 451 (1985).  That case holds "that absent some clear

7   indication that the legislature intends to bind itself contractually, the presumption is that 'a law is

8   not intended to create private contractual or vested rights but merely declares a policy to be

9   pursued until the legislature shall ordain otherwise.'"  Id. at 465-66 (quoting Dodge v. Board of

10  Education, 302 U.S. 74, 79 (1937)).  Nothing in the Bankruptcy Code manifests a clear intention

11  of the legislature to bind itself contractually.  At most, the amendments to § 523(a)(8) may have

12  upset the debtor's expectations under the prior law.  They have not, however, retroactively

13  altered any of his vested rights.

14

15        (b)    To the extent that section 523(a)(8) is retroactive, it does not violate the Ex Post
                 Facto Clause, the Contracts Clause or the Due Process Clause.

16        The debtor complains that § 523(a)(8) violates the Ex Post Facto Clause, the Contracts

17  Clause, and the Due Process Clause of the Fifth Amendment.  Those arguments are misplaced.

18  The mere fact that legislation is retroactive does not render it unconstitutional.  Landgraf, 511

19  U.S. at 267-68.  Retroactive legislation "often serve[s] entirely benign and legitimate purposes,

20

21        [6] Not all courts agree that the statutorily created right to a discharge vests on the date of discharge.  Some
    courts have held that the debtor's right to a discharge vests when he files his petition and, thus, the applicable law is
22  the law which is in effect at the time the petition is filed.  E.g., In re Ahrendt, 28 B.R. 329 (Bankr. E.D. Wis. 1983);
    In re Morris, 21 B.R. 816 (Bankr. N.D. Iowa 1982); Matter of Flamini, 19 B.R. 303 (Bankr. E.D. Mich. 1982).  This
23  does not, however, change the fact that the amendments to § 523(a)(8) did not alter any of the debtor's vested rights.
    The debtor did not file his petition until after the enactment of the latest amendment to § 523(a)(8).
24
        [7] "Perhaps the fundamental reason why retroactive legislation is suspect stems from the principle that a
25  person should be able to plan his conduct with reasonable certainty of the legal consequences . . . ."  Charles B.
    Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 692
26  (1960).  To hold as the debtor urges would suggest that student loan debtors have, from the time they enter into a
    student loan agreement, the right to anticipate and plan for the discharge of those loans in bankruptcy.  The correct
27  view is that those amendments were not retroactive at all.

28                                              -10-

1    whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new

2    statute in the interval immediately preceding its passage, *or simply to give comprehensive effect*

3    *to a new law Congress considers salutary*." Id. (emphasis added). Indeed, the Constitution's

4    limitations on retroactive legislation are limited in scope. See Landgraf, 511 U.S. at 267.

5         The Ex Post Facto Clause prohibits the retroactive application of *penal* legislation (not

6    civil law) unless the statutory scheme is so punitive that it negates the intention to deem it civil.

7    Smith v. Doe, 538 U.S. 84, 92 (2003). The bankruptcy system established under title 11 is

8    anything but punitive. Instead, the bankruptcy system offers debtors whose debts outweigh their

9    assets a "fresh start."

10        Similarly, § 523(a)(8) does not implicate the Contracts Clause. The Contracts Clause

11   does not apply to the federal government. See U.S. Const. Art 1, § 10, cl. 1 ("No *State* shall . . .

12   pass any . . . Law impairing the Obligation of Contracts.") (emphasis added); Cox Cable

13   Communications, Inc. v. United States, 992 F.2d 1178, 1182 (11th Cir. 1993) (holding that the

14   Contracts Clause does not limit the power of the federal government).

15        Finally, "Acts adjusting the burdens and benefits of economic life come to the Court with

16   a presumption of constitutionality, and . . . the burden is on one complaining of a due process

17   violation to establish that the legislature has acted in an arbitrary and irrational way." Usery v.

18   Turner Elkhorn Mining, Co., 428 U.S. 1, 15 (1976) (finding that an Act which required coal

19   mines to compensate disabled mine-workers who terminated their employment prior to the

20   enactment of the act did not violate due process). As demonstrated above, the debtor has not

21   carried his burden of establishing that the amendments were arbitrary or irrational. *Supra* Part

22   I.b. Congress's amendments to § 523(a)(8) represent its legitimate desire to further restrict the

23   ability of student loan debtors to receive a discharge in order to maintain the viability of the

24   federal student loan program. Thus, even if the legislation were retroactive as applied to the

25   debtor, the Constitution's limited restrictions on such legislation would not be violated.

26

27

28                                                -11-

**IV.**

**The imposition of collection costs (and other fees or penalties associated with default) does not violate the Eighth Amendment.**

Finally, the debtor urges this court to hold that § 523(a)(8) "violates the Eighth Amendment of the United States Constitution [sic] ban on excessive fines . . . ." Debtor's Second Supplemental Brief at 1. Yet, section 523(a)(8) imposes no fine at all.[8] In his supplemental brief, the debtor refers generally to "default fees." Presumably, the debtor argues that the collection costs authorized by 20 U.S.C. § 1091a and implemented by 34 C.F.R. § 682.410(b) violate the Excessive Fines Clause of the Eighth Amendment. Those fees are not designed to punish and therefore do not even implicate the Excessive Fines Clause.

The Excessive Fines Clause limits the ability of the government "to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" Austin v. United States, 509 U.S. 602, 609-10 (1993) (quoting Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265 (1989)) (emphasis in original). Thus, any inquiry into whether a statute violates the Excessive Fines Clause begins by asking whether the payment is sought for *punitive* purposes. See id. at 610 ("Thus, the question is . . . whether it is punishment."); Taylor v. Cisneros, 913 F. Supp. 314, 323 (D.N.J. 1995) (noting that whether a fine is excessive is only addressed once the fine is found to serve punitive purposes). While a statute need not serve solely retributive or deterrent purposes to be considered punishment, the actual purposes served by the fine, not the fine's impact or effect, determine whether the fine is remedial or punitive. See United States v. Halper, 490 U.S. 435, 447 n. 7 (1989) (noting that whether a fine constitutes punishment is not "determined from the defendant's perspective"); United States v. Hudson, 14 F.3d 536, 542 (10th Cir. 1994) (noting that simply carrying the "sting of punishment" does not make a remedial measure punitive). As such, to determine the purposes served by a measure,

---

[8] Given the debtor's other arguments (namely, that the adversary proceeding required to determine the dischargeability of student loan debt under § 523(a)(8) is unconstitutional), he may intend to argue that the costs associated with the adversary proceeding violate the Eighth Amendment. Those costs, like the collection costs charged to defaulting debtors, are remedial and not punitive. As such, they do not implicate the Eighth Amendment.

-12-

1   courts have typically examined the legislative history rather than relying on the effect of the

2   measure. Taylor, 913 F. Supp. at 320.

3          Title 20 U.S.C. § 1091a (and its implementing regulations) only serve remedial purposes.

4   That section, allowing guarantors to assess collection costs against borrowers in default, was

5   enacted "[o]ut of concern for the significant financial problems that defaulted student loans

6   pose[d] . . . ."[9] Black v. Educational Credit Management Corp., 459 F.3d 796, 799 (7th Cir.

7   2006). Put simply, the enactment of 20 U.S.C. § 1091a indicates the desire of Congress to shift

8   the cost of collecting delinquent debts from the taxpayer to those student loan debtors whose

9   actions actually trigger the extra costs. See id. at 800 ("[T]he borrowers themselves, not the

10  taxpayers, should bear the reasonable costs of collecting student loans in default."). The

11  legislative history provides further evidence that the statute was designed solely for remedial

12  purposes. It states that the amendments such as the one codified at 20 U.S.C § 1091a were

13  "designed . . . . *to reduce collection costs* . . . ." H.R. Rep. No. 99-383, at 41 (1985). Thus, the

14  legislative history confirms that the provision's purpose is purely remedial.[10]

15         The debtor argues that the collection costs charged to accounts that are in default are

16  punitive because they are grossly disproportional to the principal amount of the loan. See

17  Debtor's Second Supplemental Brief at 3-5. It is likely, however, that the debtor confuses the

18

19

20

21      [9] 34 C.F.R. § 682.410(b)(2) states in relevant part: "the guaranty agency shall charge a borrower an amount
    equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or
22  bankruptcy claim . . . the amount charged a borrower must equal the lesser of– (i) The amount the same borrower
    would be charged for the cost of collection under the formula in 34 CFR 30.60; or (ii) The amount the same
23  borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education."

24      [10] The sentence quoted refers to the purpose of several amendments that were included in the bill. In its
    entirety, it states: "H.R. 3700 contains a series of amendments designed to improve debt collection activities and
25  default recoveries, and to reduce collection costs and program abuse under the student loan programs administered
    by the Department of Education." H.R. Rep. No. 99-383, at 41. While the sentence does mention the purpose of
26  reducing program abuse, that purpose likely refers to the inclusion of other amendments which provide for: (i)
    "audits of guaranty agencies at least once every two years, allowing the Department of Education to recover funds
27  determined to be owed to it by such audits" and (ii) "civil *penalties* of up to $25,000 on lender and guaranty agencies
    found to be in noncompliance with the Higher Education Act." See id. at 42 (emphasis added).

28                                              -13-

1  collection costs with the interest that has accrued on his original loan amount.[11]  In any event,

2  neither the charging of interest on a debt obligation nor the charging of collection fees on a debt

3  obligation in default (as explained above) is punitive.  The charging of interest represents the

4  economic benefit realized by the loan holders and guaranty agencies as parties to the loan

5  contracts with the debtor.  As noted above, the federal student loan program allows students to

6  finance their education at a cost that falls significantly below that which they would incur were

7  they forced to borrow money in a non-regulated market.  Any debt, such as the one obtained by

8  the debtor, obtained in the private market would grow significantly if not serviced for the better

9  part of twenty (20) years.[12]

10

11

12

13

14

15

16

17

18

19

20  [11] Guaranty agencies are also authorized to continue collecting interest on the loan in addition to the collection fees imposed on loans in default. 34 C.F.R. § 682.410(b)(3).

21  [12] To the extent that the imposition of collection costs on a student loan in default is a "fine" that implicates
22  the Eighth Amendment, it is not excessive.  Two principles guide courts when considering whether a "fine" is excessive.  See United States v. Bajakajian, 524 U.S. 321, 336 (1998).  First, "judgments about the appropriate
23  punishment for an offense belong in the first instance to the legislature."  Id.  Thus, courts should grant substantial deference to the legislature's decision.  Id. (citing Solem v. Helm, 463 U.S. 277, 290 (1983) ("Reviewing courts . . .
24  should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes . . . .")).  Second, "any judicial determination regarding the gravity of a
25  particular criminal offense will be inherently imprecise."  Id.  Both principles counsel against requiring strict proportionality between the offense and the punishment.  Id.  As such, in order to be set aside as excessive a "fine"
26  must be grossly disproportionate to the offense. Id.  The collection costs are not excessive because they represent a reasonable effort to recoup the collection costs expended by the Department of Education. Cf. Black, 459 F.3d at
27  800 ("Barnes's loans had been in default for almost a decade prior to the time he filed his Chapter 13 petition. [He] should not be absolved from paying the years of collection costs associated with his account . . . .").

28                                        -14-

1

## CONCLUSION

2       The United States respectfully requests that this Court deny the Plaintiff's motion for

3   summary judgment and for such other and further relief as the Court deems just and proper.

4

5   DATED:    April 27, 2007

6                                       Respectfully submitted:

7                                          /s/ J. Reed Clay, Jr.

8                                       J. REED CLAY, JR.
                                        Trial Attorney
9                                       PETER D. KEISLER
                                        Assistant Attorney General
10                                      J. CHRISTOPHER KOHN
                                        TRACY J. WHITAKER
11
                                        Attorneys for:
12                                      The UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                       -15-

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA

In re:                                    )    Case No. 06-00198-B7
                                          )    Adv. No. 06-90127-B7
PAUL HUPP,                                )
                                          )    **DECLARATION OF LOLA HOM**
                    Debtor.               )
                                          )
                                          )
_____)
                                          )
PAUL HUPP,                                )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )
                                          )
EDUCATIONAL CREDIT                        )
MANAGEMENT CORPORATION,                   )
                                          )
                    Defendant.            )
_____)

I, Lola Hom, make the following declaration:

      1.     I am a Senior Loan Analyst employed by the U.S. Department of Education

(Education), Region IX, in San Francisco, CA. This declaration is based upon my own personal

knowledge.

      2.     I have access to the National Student Loan Database System (NSLDS), a larger

computer database which includes information on all outstanding loans made pursuant to Title

IV of the Higher Education Act of 1965, as well as a large body of loans made and paid off

before inception of the NSLDS in 1994. The NSLDS includes a limited amount of information

on loans not held by Education, including loans not in repayment status. This information is

derived from regular reports to Education from the holders of the loans, including Education

itself, based on the holder's regularly maintained records on these loans.

- 1 -

3.      Education does not hold a student loan for the Plaintiff, Paul Hupp. According to the NSLDS, it lists Transitional Guaranty Agency, now known as Educational Credit Management Corporation (ECMC), as the holder and guarantor of Mr. Hupp's defaulted loan. Federal Family Education Loans (FFEL) are guaranteed and then reinsured by the Education under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965. When a borrower defaults on the obligation, the holder files a claim on the guaranty. The guarantor pays a claim amount to the holder. The guarantor is then reimbursed for that claim payment by the Education under its reinsurance agreement. The guarantor attempts to collect the debt from the borrower. If the guarantor is unable to collect the full amount, Education then takes assignment of the loan(s).

4.      Once a loan is in default, the loan is due and payable in full and the borrower does not have deferments rights. Although the loan is due and payable in full, the institution holding the loan gives the borrower an opportunity to enter a repayment plan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed: ___April 27, 2007___

___/s/ Lola Hom_____
Lola Hom
Senior Loan Analyst
U.S. Department of Education