1  TIMOTHY P. BURKE, ESQ. (SBN 207084)
   TIMOTHY P. BURKE & ASSOCIATES
2  A PROFESSIONAL CORPORATION
   1136 Fremont Ave., Suite 108
3  South Pasadena, California 91030
   Tel. (626) 799-8902
4  Fax (626) 799-8912

5  Attorneys for Defendant/Appellee
   EDUCATIONAL CREDIT MANAGEMENT CORPORATION

6

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In re:                              ) Case No.:  06-00198-JM
                                        )
12  PAUL HUPP,                          ) [Chapter 7]
                                        )
13                                      )
14          Debtor.                     ) Adv. No.:  06-90127-JM
                                        )
15  ——————————————————————             )
                                        ) Dist. Ct. Case No. 08-CV-0414 H
16  PAUL HUPP,                          ) (RBB)
                                        )
17          Plaintiff,                  ) **DEFENDANT/APPELLEE ECMC'S**
                                        ) **OPENING BRIEF**
18                                      )
19      vs.                             )
                                        )
20  EDUCATIONAL CREDIT                  )
21  MANAGEMENT CORPORATION              )
                                        )
22          Defendants.                 )
                                        )
23                                      )
                                        )
24  ——————————————————————             )
25  ///
26  ///
27
28

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................ ii

I.      Statement of the Basis of Appellate Jurisdiction ............................... 2

II.     Statement of Issues ..................................................................... 2

III.    Standard of Appellate Review ...................................................... 3

IV.     Statement of the Case ................................................................ 3

    A.      Nature of the Case and Procedural History ........................... 3

    B.      Statement of Facts ........................................................ 8

V.      Summary of the Argument ........................................................... 9

VI.     Argument .................................................................................. 7

    A.      The Bankruptcy Court was Correct in its Discovery and Adminstrative

        Orders............................................................................ 10

      1. Hupp's Procedural Due Process Arguments Fail as a Matter of Law .. 10

      a.     The Bankruptcy Court did not Abuse its Discreation in its Discovery

          and Admisntrative Orders .................................................. 12

    B.      The Bankruptcy Court was Correct in its holding that Hupp Failed to

        Meet the Undue Hardship Standard ...................................... 15

      1.     The Legal Test ............................................................. 15

      2.     Prong Two ................................................................. 17

      3.     Promg Three.............................................................. 20

VII.    Conclusion .............................................................................. 23

TO THE HONORABLE MARILYN L. HUFF, UNITED STATES DISTRICT JUDGE, PAUL HUPP, PRO SE AND ALL PARTIES OF INTEREST:

COMES NOW Defendant EDUCATIONAL CREDIT MANAGEMENT CORPORATION ("ECMC") and hereby submits its Opening Brief.

## I.

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

On January 17, 2008, the Bankruptcy Court held a trial to determine whether excepting Appellant Paul Hupp's student loans from discharge was an undue hardship. On February 25, 2008, the Bankruptcy Court entered a final order, holding that Hupp's loans did not impose an undue hardship. Appellant Hupp now appeals this order to the United States District Court for the Southern District of California. This Court has jurisdiction over Hupp's appeal pursuant to 28 U.S.C. § 158 (a).

## II.

## STATEMENT OF ISSUES

Hupp lists a plethora of issues in his appeal – a total of 28 separate issues. These issues can be separated into two distinct strains. The first category consists of Hupp's assertion that the Bankruptcy Court when it found 11 U.S.C. § 523(a)(8) and 1091a constitutional. The second category consists of alleged errors by the Bankruptcy Court regarding its undue hardship determination and the discovery motions leading up to the undue hardship trial. Appellee Educational Credit Management Corporation's (hereinafter "ECMC") brief will focus on this second category: the undue hardship issues.[1]

---

[1] Although ECMC certainly agrees with the bankruptcy court's finding that the statutory provisions challenged by Hupp are constitutional, it is ECMC's understanding that the United States of America will focus its brief on the constitutional issues.

1

## TABLE OF AUTHORITIES

2

3

4   **Cases**

5   *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ..................................... 15

6   *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62

7   (1969)........................................................................................................11

8   *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548

9   (1972).......................................................................................................10

10  In re Brunner, 831 F2d 395 (2nd Cir. 1987)

11  ...............................................................................................................15

12  *Clements v. Airport Auth. of Washoe County*, 69 F.3d 321 (9th Cir. 1995) 10

13  *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th

14  Cir. 1977) ...............................................................................................13

15  *Drobny v. CIR*, 113 F.3d 670 (7th Cir. 1997)..........................................14

16  *Duke v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007)...........................15

17
18  *Educ. Credit Mgmt. Corp. v. DeGroot*, 339 B.R. 201 (D. Or. 2006).........22

19  *Educ. Credit Mgmt. Corp. v. Mason*, 464 F.3d 878 (9th Cir. 2006)...........21

20  *ELCA Enter., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186 (8th Cir.

21  1995).......................................................................................................12

22  *Gill v. Nelnet Loan Servs. (In re Gill)*, 326 B.R. 611 (Bankr. E.D. Va.

23  2005).......................................................................................................20

24  *Goulet v. Educ. Credit. Mgmt Corp.*, 284 F.3d 773 (7th Cir. 2002)..........19

25  *Halaco Engineering Co. v. Costle*, 843 F.2d 376 (9th Cir. 1988)...............3

26  *Healey v. Mass. Higher Educ. (In re Healey)*, 161 B.R. 389 (E.D. Mich.

27  1993).......................................................................................................18

28  *In re Mallinckrodt*, 274 B.R. 560 (S.D. Fla. 2002)...................................17

*Janicki v. Logging Co. v. Mateer*, 42 F.3d 561 (9th Cir. 1994).................13

*Lowe v. ECMC (In re Lowe)* 321 B.R. 852 (Bankr. N.D. Ohio 2004).........20

*Maulin v. Sallie Mae (In re Maulin)*, 190 B.R. 153 (Bankr. W.D.N.Y. 1995)

.................................................................................................................21

*Pena v. United Student Aid Funds (In re Pena)*, 155 F.3d 1108 (9th Cir.

1998).....................................................................................................19, 26

*Penn. Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R.

490 (9th Cir. B.A.P. 2002).....................................................................3, 18, 21

*Penn. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298

(3d Cir. 1995)..................................................................................................16

*Perry v. Student Loan Guarantee Found. of Arkansas (In re Perry)*, 239

B.R. 801 (Bankr. W.D. Ark. 1999).................................................................18

*Pfizer, Inc. v. Kelly (In re Sch. Asbestos Litig.)*, 977 F.2d 764 (3d Cir. 1992)

...................................................................................................................14

*Richmark Corp v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992)

.......................................................................................................................3

*Rifino v. United States (In re Rifino)*, 245 F.3d 1083 (9th Cir. 2001)...passim

*State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300 (2d Cir.

1996)..............................................................................................................12

*Tenn. Student Assistance Corp v. Hood*, 541 U.S. 440 (2004)................15

*United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973)

.......................................................................................................................11

*United Student Aid Funds v. Nascimento (In re Nascimento)*, 241 B.R. 440

(B.A.P. 9th Cir. 1999).....................................................................................22

*Wharton v. Calderon*, 127 F.3d 1201 (9th Cir. 1997)...........................3, 13

**Statutes**

11 U.S.C. § 1091a............................................................2

11 U.S.C. § 523(a)(8)...........................................2, 4, 15, 19

28 U.S.C. § 157(d)............................................................7

28 U.S.C. § 158 (a)..........................................................2

28 U.S.C. § 2403(a) ........................................................**10**

**Rules**

FED. R. BANKR. P. 7025.....................................................12

**Regulations**

34 C.F.R. § 682.402(e).....................................................12

34 C.F.R. § 682.402(e)(9)(iii)(B)...........................................12

APPELLEE EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S OPENING BRIEF
TABLE OF AUTHORITIES
DISTRICT COURT CASE NO: 08-CV-0414 H RBB
CH 7 BANKRUPTCY NO.: 06-00198 / ADV NO. 06-90127

## III.

## STANDARD OF APPELLATE REVIEW

In this appeal, there are several relevant standards of review. First, this court "review[s] discovery orders generally for abuse of discretion." *Wharton v. Calderon*, 127 F.3d 1201, 1205 (9th Cir. 1997). *See also Richmark Corp v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (holding that lower court's rulings compelling discovery are reviewed for an abuse of discretion). Under the highly deferential abuse of discretion standard, "[t]hese decisions should not be reversed 'absent a definite and firm conviction that the district court made a clear error of judgment.'" *Id.* (citing *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988)).

Whether repayment of a student loan debt would impose an undue hardship is a legal question, which is reviewed *de novo* by this Court. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1086-87 (9th Cir. 2001). *See also Penn. Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 493 (9th Cir. B.A.P. 2002). But, the Bankruptcy Court's findings of fact are reviewed under a clearly erroneous standard. *Rifino*, 245 F.3d at 1088.

## IV.

## STATEMENT OF THE CASE

**A.    Nature of the Case and Procedural History.**

Paul Hupp filed a complaint against United Student Aid Funds, Inc. (hereinafter "USAF") on February 8, 2006 asking the Bankruptcy Court to discharge his student loan debt based on undue hardship pursuant to 11 U.S.C. § 523(a)(8). [Docket #1][2]  On March 9, 2006, ECMC filed its Answer to the

---

[2] Because this Court previously ruled that it would not require copies of all relevant documents and instead would refer to the documents available on PACER, ECMC will reference them according to their docket numbers. Unless otherwise indicated, Docket #s apply to the main bankruptcy court adversarial proceeding, No. 06-90127.

complaint. [Docket #5]. ECMC filed this Answer because USAF was in the process of transferring all right, title and interest in the student loans to ECMC.[3] *Id.* After ECMC had received the transferred loans, ECMC filed a motion to permit it to substitute as the real party in interest on March 28, 2006. [Docket #12] Hupp opposed ECMC's motion to substitute for USAF and concurrently filed motions to compel discovery against USAF and a motion to strike ECMC's Answer on May 30, 2006. [Docket #14-16]    The court granted ECMC's motion to substitute and denied Hupp's motions. [Docket #19, 23].

Thereafter, over the course of the next two months, Hupp filed myriad motions and objections, including a *Motion to Request Leave to Serve an Additional 10 Interrogatories to ECMC* [Docket #30], *Motion to Request Leave to File an Additional 10 Pages on Motion for Summary Judgment to Argue Constitutional Violations* [Docket #31], a *Motion to Request Appointment of Counsel* [Docket #32], a *Motion Requesting Discovery and Dispositive Motion Cut Off Dates and Trial Dates* [Docket # 39], a *Notice of Intent to Argue Title 11 of the United States Code Section 523(a)(8) as Applied is Unconstitutional* [Docket # 44], *a Motion to Compel* [Docket # 48], *a Request to Strike Defendant ECMC's Opposition to Plaintiff's Motion to Compel* [Docket # 58], and a *Motion for Summary Judgment* [Docket # 49-54].[4]

The Bankruptcy Court granted Hupp's motions to file additional interrogatories and additional pages, but denied his request for appointment of

---

[3] ECMC is a private, non-profit corporation, which performs as a guaranty agency in the Federal Family Education Loan Program ("FFELP"). Guaranty agencies, such as ECMC, guarantee such loans against default and are, in turn, reinsured by the United States Department of Education ("ED"). 20 U.S.C. §§ 1085(j), 1078(c). ECMC also provides specialized guarantor services to ED and other guaranty agencies under the Higher Education Act, such as accepting transfer of title to certain student loan accounts from ED and other guarantee agencies on which the student loan borrower has filed bankruptcy, as happened here.

[4] In response to Hupp's Notice of Intent to argue constitutional issues, and in contemplation of 28 U.S.C. § 2403(a), the bankruptcy court entered a certification to the Attorney General, on December 14, 2006. [Docket #64]

counsel.    [Docket #33, 35, 36].    It denied Hupp's Motion to Compel on December 13, 2006 because Hupp failed to comply with the local rules requiring a meet and confer meeting prior to moving the court. [Docket #62].

Over the course of the next month, Hupp filed several additional motions to compel and motions to request discovery cut-off dates. [Docket # 69, 70, 80, 81]. On November 30, 2006, ECMC also filed a motion to compel, which was granted in part and denied in part on February 23, 2007. [Docket # 56, 68, 96].

In the midst of Hupp's numerous discovery motions and notices, *and* prior to the court's ruling on many of them, Hupp filed a dispositive motion, moving the Bankruptcy Court for summary judgment on November 27, 2006. [Docket # 49]. ECMC filed its opposition on December 6, 2006. [Docket # 61, 63]. The United States filed its opposition brief to Hupp's Motion for Summary Judgment on April 27, 2007.[5] [Docket # 115] On December 18, 2006 and on May 11, 2007, Hupp filed reply briefs in support of his motion for summary judgment. [Docket # 67, 120]    After the summary judgment motion had been fully briefed, the bankruptcy court calendared Hupp's Motion for Summary Judgment for hearing and oral argument on June 22, 2007. [Docket # 124][6]

On May 28, 2007, while the summary judgment motion was fully briefed, awaiting oral argument, Hupp, filed a *Motion to Transfer Case to District Court*, which included requests for declaratory relief and injunctive relief from the alleged unconstitutional provisions, class action certification,

---

[5] The United States requested additional time to respond to Hupp's Summary Judgment motion, on February 16, 2007, regarding his claims of the constitutionality of various provisions of the bankruptcy code, which was, naturally, objected to by Hupp. [Docket # 89, 97]. The court allowed the United States additional time by virtue of its order on February 23, 2007. [Docket #98]  The United States then decided to intervene on April 16, 2007, and thereafter filed its response to Hupp's summary judgment motion. [Docket # 110].

[6] On January 19, 2008, while several of these motions were still pending, , Hupp also filed a motion to disqualify the Honorable Peter W. Bowie, Bankruptcy Court Judge for the Southern District of California, who was presiding over the trial. [Docket # 78].  Hupp petitioned the United States District Court for the Southern District of California requesting the District Court to issue a writ requiring the Honorable Peter W. Bowie to schedule a trial date in his adversary proceeding. *See Paul Hupp v. Honorable Peter W. Bowie*, No. 07-CV-0182 (S.D. Cal. 2007). The District Court denied his petition on May 9, 2007, but, in the meantime, the Honorable Peter W. Bowie signed an Order of Recusal on April 27, 2007, removing himself from further proceedings. [Docket # 117]; *id.* The case was then reassigned to United States Bankruptcy Court Judge James W. Meyers for further proceedings. [Docket # 119].

and for leave to add United States Secretary of Education Margaret Spellings as defendant. [Docket # 123].[7] The next day, May 29, 2007, Hupp filed another *Motion to Set Trial Date* despite the fact that his summary judgment motion was still pending. [Docket # 125].

On June 19, 2007, the Bankruptcy Court issued an order stating that within Hupp's May 28, 2007 *Motion to Transfer* was a motion to withdraw reference. [Docket #141] Accordingly, the Bankruptcy Court then stayed the other pending motions to allow the district court to decide the motion to withdraw. [Docket #141]. ECMC and the United States filed oppositions to Hupp's *Motion to Transfer Case*.[8] [Docket # 129, 130]. The United States and ECMC opposed it for numerous legal reasons, including the fact that Hupp had never pled any of these allegations or requests in his complaint and his motion was untimely and unfairly prejudicial to the defendants. This motion to withdraw reference was then transferred for consideration on July 3, 2007 to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. § 157(d). [Bankruptcy Case No. 06-90127, Docket #145] [District Court Case No. 07-1232, Docket #1]. The Honorable William Q. Hayes, United States District Court Judge for the Southern District of California, denied the motion to withdraw reference, on September 24, 2007.[9] [Docket # 152].

On November 29, 2007, the Bankruptcy Court heard oral argument on Hupp's Motion for Summary Judgment. [Docket #171] On January 9, 2008,

---

[7] ECMC and the U.S. filed oppositions to Hupp's May 28, 2007 Motion. [Docket # 129, 130]. The United States and ECMC opposed it for numerous legal reasons, including the fact that Hupp had never pled any of these allegations or requests in his complaint and his motion was untimely and unfairly prejudicial to the defendants.
[8] After the Bankruptcy Court issues its order on June 19, 2007, Hupp filed a motion entitled *Motion to Withdraw the Reference*. [Docket # 144].
[9] Judge Hayes's decision held that Hupp's motion to withdraw reference was untimely since Hupp filed the motion to withdraw reference 15 months after filing his adversarial complaint, 7 months after he initially brought up the constitutional issues, 1 month after the United States intervened, and after Hupp's motion for summary judgment had been fully briefed and was pending before the District Court. *See Hupp v. Educational Credit Management Corporation*, Civ. No. 07-1232 (S.D. Calif. 2007), dated September 13, 2007.

the Bankruptcy Court entered an order, denying Hupp's motion for summary judgment, "for the reasons stated orally on the record" at the hearing on November 29, 2007.[10] [Docket # 190]. In the Bankruptcy Court's November 29, 2007 order, the Bankruptcy Court also scheduled trial for January 17, 2008 and indicated that trial would be limited to the issue of undue hardship under § 523(a)(8). *Id.*

On January 17, 2008, trial was conducted where the Bankruptcy Court took the matter under advisement. [Docket #194]. It then issued a memorandum decision on February 25, 2008 finding that Hupp had not met his burden in establishing that it was an undue hardship for him to repay his student loan debt. [Docket # 197]. The Bankruptcy Court found that Hupp met Prong One of the undue hardship test, but failed to establish Prong Tow or Three. Specifically, the Bankruptcy Court held that Hupp did not have "insurmountable barriers" to financial recovery, as required by Prong Two, stating,

> Plaintiff has not provided any evidence of "exceptional circumstances" or "insurmountable barriers" that are strongly suggestive of his inability to repay the loans over an extended period of time. He has simply chosen to put his education, talents, time and efforts toward lawsuits rather than to seek gainful employment to repay the loans.
>
> \*\*\*
>
> The Plaintiff failed to meet his burden of proof on the second prong. He has spent the last four years in litigation to avoid

---

[10] Hupp attempted to appeal the denial of summary judgment on December 03, 2007 after the court ruled orally, but before the final order was issued. [Docket # 171-176]. On February 25, 2008, the Bankruptcy Appellate Panel for the Ninth Circuit dismissed this appeal because it was interlocutory. [Docket # 198].

repaying these loans rather than seeking employment to enable him to make the payments.

*Mem. Decision* at 4-5 [Docket #197].

The Bankruptcy Court also found that Hupp failed to demonstrate he had made good faith efforts to repay his debt, as required by prong three of the undue hardship test. *Id.* at 5. The court found, particularly probative the fact that:

> For most of this decade, [Hupp] continued his education in law school and then spent several years pursuing lawsuits in an attempt to eliminate the student loan debt, not to repay it.

*Id.*

**B.    Statement of the Facts.**

The Bankruptcy Court found that Hupp borrowed approximately $7,300 in the late 1980s to attend college. *Id.* at 2. Hupp testified that he graduated with a teaching degree in 1987. *Id.* He then consolidated his student loans in 1991 and requested and received deferments for several years. *Id.* The Bankruptcy Court stated that "The Plaintiff contends that the balance has now increased from $7,300 to an amount between $60,000 and 70,000," due to Hupp's lack of payments and defaulted status. *Id.*

The Bankruptcy Court also found that Hupp was "relatively healthy," 47 years old, with no dependents. *Id.* The court found that while Hupp worked at different jobs over the years with sufficient income, he did not repay his student loan debt. *Id.* The Bankruptcy Court also found that Hupp has a substitute teaching credential, a real estate sales associate license, and a law degree. *Id.* Hupp testified that he cannot be a teacher or attorney without a clear background check, but he did not offer any evidence of this other than his testimony. *Id.*

The Bankruptcy Court found that after graduating from law school, Hupp had not worked and instead spent his time "involved in this case and other lawsuits." *Id.* It found that Hupp

> ...testified that he has spent over three thousand hours trying to
> have this debt discharged. He presently lives with his mother, and
> gave no further information concerning his living expenses.

*Id.*

## V.

## <u>SUMMARY OF THE ARGUMENT</u>

In short, Hupp failed to meet his evidentiary burden in proving undue hardship. He tries to cover this simple fact up by resorting to name-calling and outlandish accusations. Examining the law and evidence, however, reveals Hupp's failure to meet his evidentiary burden in proving undue hardship. It also shows that the Bankruptcy Court did not abuse its discretion in its procedural, administrative, and discovery orders. Accordingly, the Bankruptcy Court's decision should be affirmed.

///

# VI.

# __ARGUMENT__

**A.    The Bankruptcy Court Was Correct in its Discovery and Administrative Orders**

> *1.    Hupp's Procedural Due Process Arguments Fail As a Matter of Law.*

Hupp begins his brief by arguing that several administrative and discovery orders were erroneous. Hupp appears to make the dubious claim that the alleged errors in the Bankruptcy Court's discovery orders and administrative issues violated his "basic procedural due process rights." *See Hupp Opening Br.* at 6-10. To state a claim for a violation of his procedural due process rights, Hupp must show (1) he has a protected property interest under the due process clause and (2) that he was deprived of the property without receiving the process he was due. *See Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 331 (9th Cir. 1995). Hupp does not elucidate how he meets these requirements in his brief.

But giving Hupp's brief a very generous reading, it appears that he is suggesting that the exception of his student loan debt from discharge is a constitutionally protected interest. ECMC fails to see how this could possibly rise to the level of a constitutionally protected property interest for Hupp. Nevertheless, in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court explained the source and nature of constitutionally cognizable property interests:

> Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577.

Contrary to the assertions of Hupp, the Supreme Court has long held that "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy," because "no fundamental interest is gained or lost depending on the availability of a discharge in bankruptcy." *United States v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Because federal law does not create a protected property or liberty interest in the receipt of a discharge of one's debts in bankruptcy, Hupp has not stated an interest on which to base his due process claim.

Even if a federally protected property or liberty interest were established, any denial of that interest did not violate due process in this case. The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Hupp served the complaint in this action himself, he was given ample opportunity to file responses, motions, discovery, and did so. He also was afforded a hearing with many procedural safeguards inherent in the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure. Hupp has not identified what additional process he feels he should have been provided. A mere negative outcome resulting from the application of the Code to his debt does not create a procedural due process violation.

To the extent Hupp's allegations are intended to be construed, instead, as an assertion that the Bankruptcy Court committed legal errors in allowing ECMC to substitute, in granting and denying motions to compel, in granting an extension of time to the United States to respond, in denying Hupp's motion to set up a scheduling order, in denying Hupp's request to format a scheduling order, and in the denial of class certification and to interplead the United States

Secretary of Education, ECMC will now turn to these similarly ineffectual arguments.

### a. The Bankruptcy Court Did Not Abuse Its Discretion in its Discovery and Administrative Orders.

Hupp's first assertion is that the Bankruptcy Court erred when it allowed ECMC to transfer in as a real party in interest. *See Hupp's Opening Br.* at 6. However, whether to grant a motion for substitution of parties is committed to the sound discretion of the district court and is reviewed only for abuse of discretion. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1311-12 (2d Cir. 1996); *ELCA Enter., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190-91 (8th Cir. 1995) (holding abuse of discretion standard governs review of lower court's decision regarding substitution of parties).

Hupp has failed to show how the Bankruptcy Court's decision to allow ECMC to substitute in as the real party in interest was an abuse of discretion.[11] *Hupp's Opening Br.* at 6. ECMC provided documentation which indicated that USAF had assigned all rights, title, and interest in Hupp's loans to ECMC. *See Angela Houff's Declaration attached to ECMC's Motion to Substitute in as Real Party in Interest [Docket #12].* Pursuant to Rule 25(a)(3) and 25(c) of the Federal Rules of Civil Procedure – made applicable to adversary proceedings

---

[11] Hupp also fails to state how it specifically prejudiced him in his undue hardship trial. Instead, Hupp makes a broad, generic assertion that USAF was an important party to this case because they "intentionally and willfully interfered with" his "legal rights to discharge his student loan under the false certification defense." *Hupp's Op. Br.* at 6. However, even assuming there is truth to this allegation, it is not relevant to the Bankruptcy Court's undue hardship determination. The false certification process is actually an administrative remedy available to student loan borrowers *if* they meet certain criteria as explained in 34 C.F.R. § 682.402(e). Hupp was denied this administrative remedy. The borrower is then entitled to have the Secretary of Education review the decision pursuant to 34 C.F.R. § 682.402(e)(9)(iii)(B). The next step would likely involve a lawsuit against USAF or the Department of Education. Indeed, Hupp appears to have done this when he sued USAF in the Contra Costa County Superior Court on November 10, 2003. *See Hupp v. United Student Aid Funds, Inc.*, Case No. CIVSMC 03-02042. In any case, the Bankruptcy Court is not the proper forum for this issue. Whether Hupp established undue hardship is the proper focus, not whether USAF "intentionally" or "willfully interfered with" his "legal right" to a false certification discharge.

by Rule 7025 of the Federal Rules of Bankruptcy Procedure – the Bankruptcy Court considered ECMC's motion and ordered the substitution. It did not abuse its discretion in doing so.

Next, Hupp argues that the Bankruptcy Court erred by refusing to implement an appropriate Rule 16 scheduling order. Again, this Court "review[s] decisions involving pretrial scheduling orders issued pursuant to Federal Rule of Civil Procedure 16 for an abuse of discretion."[12] *Janicki v. Logging Co. v. Mateer*, 42 F.3d 561, 563 (9th Cir. 1994). Hupp fails to explain how the Bankruptcy Court's failure to issue a Rule 16 order in the matter in which Hupp desired was an abuse of discretion. He also fails to state how it prejudiced him in any way.[13] Moreover, any delay occurred because of Hupp's endless filing of motions. Hupp continued to file motions and opposition to motions without waiting for them to be ruled on before filing more. He injected new issues into the lawsuit without attempting to amend his complaint. Nevertheless, the Bankruptcy Court, while sorting through Hupp's numerous motions, notices, and hearing on motions still continued to have pretrial status conferences to ensure the movement of the litigation. *See* Docket # 13, 19, 38, 46, 57, 84.

Hupp also asserts numerous errors regarding the Bankruptcy Court's denial and granting of various discovery motions. *See Hupp's Opening Brief on Appeal*, at 8-9. Again, this court "review[s] discovery orders generally for abuse of discretion." *Wharton*, 127 F.3d at 1205; *see also Data Disc, Inc. v.*

---

[12] Federal Rule of Civil Procedure 16 is made applicable by Federal Rule of Bankruptcy Procedure 7016.

[13] Ironically, even if the Bankruptcy Court were to have issued a Rule 16 scheduling order more quickly as Hupp would have liked, it likely would have only had the effect of limiting many of Hupp's prolific filings. Hupp's allegations that Judge Bowie's "misconduct" caused his case to turn into a "marathon 25 month case" is illogical since 25 months is certainly still within what would be considered a normal duration for an undue hardship adversary proceedings. *See Hupp's Op. Br.* at 4 (emphasis original). The adage, "the wheels of justice turn slowly" comes to mind. In any case, Hupp's conduct in peppering the court and parties with a flurry of motions, complaints, and notices can be directly linked to any delay.

1    *Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n 1 (9th Cir. 1977)

2    (holding the trial court is vested with broad discretion in granting discovery and

3    will not be reversed except upon the clearest showing that denial of discovery

4    results in actual and substantial prejudice to the complaining litigant).

5    　　　Hupp does not assert how the Bankruptcy Court's denial or granting of

6    any motions to compel was prejudicial to him or tantamount to an abuse of

7    discretion.    He instead asserts a vague and blanket assertion that the acts

8    "violated basic procedural due process rights." *Hupp's Opening Br.* at 8-9. This

9    indistinct complaint is simply insufficient to establish that the court abused its

10   discretion in its discovery orders. *See also* Section VI.A.1 (discussing Hupp's

11   flawed assertions of a violation of procedural due process in this adversary

12   proceeding).

13   　　　Hupp's next assertion that the Bankruptcy Court erred "by engaging in *ex*

14   *parte* communication with the USA" is both bizarre and nonsensical.    *See*

15   *Hupp's Opening Br.* at 9.    Hupp's concern is that the Bankruptcy Court's

16   courtroom deputy contacted the United States' counsel on the phone to attempt

17   to schedule a hearing and prevent conflicts with the Assistant United States

18   Attorney (hereinafter "AUSA").    This administrative phone call from the

19   courtroom deputy to the AUSA does not even come close to an impermissible

20   *ex parte* communication.    The United States already thoroughly briefed this

21   issue in its *Memorandum of Points and Authorities in Support of Its Motion to*

22   *Strike Plaintiff's Notice of Improper Ex Parte Communication* [Docket #159],

23   but, in summary, *ex parte* communications are permitted when they involve

24   only administrative matters. *See Drobny v. CIR*, 113 F.3d 670, 680 (7th Cir.

25   1997) (holding that it is well-established that an *ex parte* communication that

26   does not concern the merits of the case is permissible).    Here, Hupp's only

27   allegation of *ex parte* communication is that the courtroom deputy contacted the

28   United States to schedule a hearing – clearly an administrative task – and which

is clearly permitted. *Id.*    In addition, this scheduling phone call did not prejudice Hupp in any way. *See Pfizer, Inc. v. Kelly (In re Sch. Asbestos Litig.)*, 977 F.2d 764, 789 (3d Cir. 1992) (requiring actual prejudice when alleging impermissible *ex parte* communication).

Next, Hupp alleges that the Bankruptcy Court erred by denying his motion to grant class action relief. *Hupp's Opening. Br.* at 9-10. A court's "decision to certify a class is subject to 'very limited' review and will be reversed 'only upon a strong showing that the district court's decision was a clear abuse of discretion." *Duke v. Wal-Mart, Inc.*, 509 F.3d 1168, 1175 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001). Hupp does not point to any particular error that the Bankruptcy Court committed that caused it to abuse its discretion in denying class certification.[14]    However, the Bankruptcy Court had ample legal rationale for denying Hupp's motion for class certification, including the fact that it was untimely and not alleged in his complaint. The Bankruptcy Court did not abuse its discretion in its denial of class certification.

**B.    The Bankruptcy Court Was Correct in Its Holding That Hupp Failed To Meet the Undue Hardship Standard.**

Hupp also appeals the Bankruptcy Court's finding that he did not meet his burden in proving undue hardship as required by 11 U.S.C. § 523(a)(8). The Bankruptcy Court found that Hupp met *Brunner*'s first prong, but failed both prongs two and three.

***1.    The Legal Test***

Student loans are presumptively nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(8); *see also Tenn. Student Assistance Corp v. Hood*, 541 U.S. 440, 450

---

[14] Hupp only states: "This motion for class action certification was supported by the declarations of seven (7) different student loan debtors with the exact same problems of Mr. Hupp." *Hupp's Op. Br.*, at 9.

(2004). Like the vast majority of circuits, this Circuit, applies the three-pronged test originally enunciated by the Second Circuit in *Brunner v. N. Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 831 F.2d 395 (2d Cir. 1987); *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1111 (9th Cir. 1998). Under *Brunner*, the debtor must prove that

> (1)  he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans;

> (2)  additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

> (3)  he has made good faith efforts to repay the loans.

*Pena*, 155 F.3d at 1111.

The burden of proving undue hardship is on the debtor and, "[i]f the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'" *Rifino*, 245 F.3d at 1088 (quoting *Penn. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995)). Specifically, it is incumbent upon the debtor to present evidence of facts supporting each element of the *Brunner* test by a preponderance of the evidence. *Id.* Importantly, if the debtor fails to meet his burden, the burden of production or persuasion never shifts to the student loan creditor. *Rifino*, 245 F.3d at 1088. Hupp failed to satisfy his burden of proof. He simply offered no evidence that would substantiate his claim that it would be an undue hardship to repay his student loan debt.

### 2. Prong Two

Hupp argues that he meets the second prong "based upon the amount of time he has been unemployed or under employed." *Hupp's Opening Br.*, at 29. However, Hupp bore the burden of affirmatively proving he could not earn more income. As a district court in Florida stated:

> As [the student loan creditors] point out, however, it is not for them to show that Mallinckrodt will earn more money. Mallinckrodt has the burden to prove that he *cannot* earn more money in the years to come. *See Brightful*, 267 F.3d at 326. . . Here, Mallinckrodt has only proved that he has earned insufficient income up until now. *In re Mallinckrodt*, 274 B.R. 560, 567 (S.D. Fla. 2002) (emphasis in original).

Hupp seems to argue that because he was involved in so many lawsuits, he was justified in not working in any capacity. However, the Bankruptcy Court, obviously, did not find that to be true – most likely because it did not consider Hupp's explanations and rationale credible. Instead, it held that Hupp "has simply chosen to put his education, talents, time and efforts toward lawsuits rather than to seek gainful employment to repay the loans." *Mem. Decision* at 4 [Docket # 197].

Hupp complains that the Bankruptcy Court failed to take into consideration the "16 years" he spent litigating to clear his teaching credentials and then to litigate this case. However, it is clear that the Bankruptcy Court **did** take this into consideration. It merely disagreed with Hupp's belief that the numerous lawsuits justified his not working.

Indeed, many litigants are able to work and are also able to job search while litigating student loan cases. Significantly, Hupp did not provide any evidence that he ever looked for other work or that he applied for jobs in other fields. Hupp is highly-educated, with a substitute teaching credential, eligibility for a regular teaching credential, a real estate associate license, and a law degree. As the Bankruptcy Court correctly found, Hupp is "bright, educated

1  and able to communicate both orally and in writing." *Mem. Decision* at 4
2  [Docket # 197].

3      Moreover, Hupp did not provide any evidence as to why he cannot work
4  in the legal field, given that he possesses a J.D. degree. [15] Presumably, the
5  Bankruptcy Court took it into consideration when it found that Hupp could
6  certainly take steps to earn more income, as required by *In re Birrane*, 287
7  B.R. at 495 (holding the proper inquiry is whether it would be
8  "unconscionable" to require the debtor to take steps to earn more money). *See*
9  *Mem. Decision* at 4 (stating "there are most certainly steps he could take to earn
10  more money") [Docket # 197].

11      But it is not clear from the record whether Hupp's hyper-focus on his
12  teaching credentials was a result of a deep desire to work as a teacher, ignoring
13  his more recent J.D. credential, or whether it was simply torpor. Regardless,
14  courts have been clear that "the marketplace must be full of those who might
15  not be doing the jobs they would most prefer, but who nevertheless labor for
16  many years to pay back the student loans." *Perry v. Student Loan Guarantee*
17  *Found. of Arkansas (In re Perry)*, 239 B.R. 801, 809-10 (Bankr. W.D. Ark.
18  1999). *See also Educ. Credit Mgmt. Corp. v. DeGroot*, 339 B.R. 201, 208 (D.
19  Or. 2006) ( stating "[t]he experience of life teaches us that, other than the
20  privileged few, all encounter intervals in which they cannot do precisely what
21  they desire because it simply does not pay enough money") (citing *Healey v.*
22  *Mass. Higher Educ. (In re Healey)*, 161 B.R. 389, 394 (E.D. Mich. 1993)).

23      A case from the Seventh Circuit is also illustrative. In *Goulet*, the
24  Seventh Circuit refused to discharge a 55-year-old's $76,000 student loan debt,
25  despite his age, history of substance and alcohol abuse, and felony conviction,
26  holding:

27

28  [15] The Bankruptcy Court found that Hupp earned a law degree in 2003. *Id.*, at 2. Although there is no evidence whether Hupp had passed the bar, there, likewise, was no evidence as to why Hupp could not pass the bar or whether he had already attempted it in California or in Michigan (where he attended law school).

> The record does not reveal that he lacks usable job skills or that he is hindered by a limited education. In fact, because of the loans, he received an excellent education. The natural conclusion, when considering his exemplary educational record and nearly-completed graduate work, is that Goulet can apply himself when he desires to do so. The record does not demonstrate that he lacks the capacity to work, only that he does not seem anxious to do so. Moreover, even if Goulet's prospects in the mental health field or the insurance industry are foreclosed, there is no evidence that Goulet is unemployable in other areas. Rather, the record indicates that Goulet has simply failed to diligently pursue employment such that he would be able to alleviate his financial burdens. *Goulet v. Educ. Credit. Mgmt Corp.*, 284 F.3d 773, 779 (7th Cir. 2002).

Hupp also implies that the California Commission on Teacher Credentialing (hereinafter "the Commission"), ECMC, and the Department of Education somehow conspired to force his loan into an intentional default, and that this "fact" is related to a Prong Two analysis. *Hupp's Opening Br.*, at 3, 28. This allegation is, at best, absurd. First of all, it escapes ECMC how the Commission or anyone else might have ***intentionally*** forced his student loan into default. Indeed, Hupp fails to make clear exactly how the Commission ***intentionally*** caused him to default.

Nevertheless, to the extent that Hupp is claiming that the Commission – a state agency – directly "caused" his loan default, his argument is not related to ECMC – a federal student loan guaranty agency. Thus, even if the Commission somehow intentionally caused his default, the proper forum would be in a suit against the Commission, not against ECMC, and not in bankruptcy court.

Regardless, the Bankruptcy Court did not error in finding that Hupp did not meet his burden in proving he had insurmountable barriers to financial

recovery. As the Bankruptcy Court indicated, **if** Hupp's expenses[16] remained exactly the same, consistently working as a substitute teacher would enable him to repay his student loans rapidly. *Mem. Decision* at 4 [Docket #197].

### 3. Prong Three

Because Hupp failed to meet the second prong, the inquiry should have ended there. *See Rifino*, 245 F.3d at 1088 (holding if the debtor fails to establish an element of the test, the court's inquiry must end and the debt must be declared non-dischargeable). Nevertheless, as the Bankruptcy Court correctly held, Hupp failed to establish the third prong of the *Brunner* test.

The Bankruptcy Court found that Hupp failed to meet his burden in proving he had made good faith efforts to repay his student loan debt. The Bankruptcy Court held, "For most of this decade, [Hupp] continued his education in law school[17] and then spent several years pursuing lawsuits in an attempt to eliminate the student loan debt, not to repay it," before concluding that he had failed to meet his burden on the third prong. *Mem. Decision*, at 5 [Docket #197].

A proper analysis under prong three requires courts to consider many factors. *Gill v. Nelnet Loan Servs. (In re Gill)*, 326 B.R. 611, 638-40 (Bankr. E.D. Va. 2005) (intricately detailing good faith considerations). "[A] primary consideration is whether the debtor actually made any payments on the obligation, and if so, the total amount of payments." *Id.* at 638. At a minimum, any analysis should consider efforts made from the time the loans first went into repayment through the date of the trial. *Gill*, 326 B.R. at 640 (debtor's

---

[16] Hupp failed to put in any evidence regarding his expense. Thus, his expenses were considered to be zero. *See Lowe v. ECMC (In re Lowe)* 321 B.R. 852, 857 (Bankr. N.D. Ohio 2004) (holding "for purposes of allocating evidentiary weight, it is difficult to properly gauge with any accuracy the true state of the Debtor's financial affairs, an evidentiary weakness for the Debtor as []he, and not the [student loan creditor] carries the burden of proof" ).
[17] Evidently, Hupp was able to get through all of law school without any student loan debt, all while not making any payments towards his consolidated student loan debt obtained in 1991.

1 obligation to make good faith efforts to repay or to restructure their debt is not

2 extinguished by the filing of an adversary proceeding).

3          The good faith prong is meant to effect Congressional intent by requiring

4 the repayment of student loans in all but the most extreme cases. *See Pena*, 155

5 F.3d at 1111. In all cases, "the debtor must come forward with evidence of

6 efforts . . . that reflect a sense of good faith under the circumstances of each

7 particular obligor." *Maulin v. Sallie Mae (In re Maulin)*, 190 B.R. 153, 156

8 (Bankr. W.D.N.Y. 1995). Courts in this Circuit routinely examine a debtor's

9 efforts in obtaining employment, maximizing income, minimizing expenses,

10 and negotiating alternative repayment arrangements. *See Educ. Credit Mgmt.*

11 *Corp. v. Mason*, 464 F.3d 878, 885 (9th Cir. 2006); *In re Birrane*, 287 B.R. at

12 500.

13          Here, Hupp does not formulate any legal argument as to how the

14 Bankruptcy Court erred in its holding that he failed to establish good faith.

15 Instead, Hupp relies on insults and tirades, stating, for example, that "Judge

16 Meyers 'facts' are 100% false in applying the third prong…and just more

17 manipulation of the record" such that if Judge Meyers "was a C.P.A. doing an

18 audit instead of presiding over [this] legal case…and…exaggerated the

19 income…while minimizing the expenses…Judge Meyers would be in prison,"

20 and "if this happened to Judge Meyer's son or daughter or Judge

21 Bowie's…son…Bowie and Meyers would be singing a different tune…and

22 would not be engaging in the judicial misconduct or writing the garbage

23 decisions that have come out of this case." *Hupp's Opening Br.* at 32, 33. He

24 goes on to disparage the court further by accusing the court of a "lack of candor

25 and honesty in the decision." *Id.* at 33.

26          Conversely, Hupp fails to cite any caselaw or other legal support for his

27 assertion that the Bankruptcy Court erred in its decision regarding Prong Three.

28 Indeed, the only case referenced by Hupp is the *Brunner* case, stating that

"Maria Brunner also never had a state teacher Commission tortiously interfering with her employment or a loan holder willfully and intentionally forcing her into default so they could jack up the bogus fees and penalties." *Id.* Even putting aside the rather absurd allegation that ECMC "willfully and intentionally forc[ed] [Hupp] into default" by somehow scheming with the California state teacher credentialing commission, the fact remains that Hupp defaulted because he failed to make any payments.

Moreover, Hupp does not, and cannot, point to any evidence in the record which demonstrates he made good faith efforts to obtain work, maximize his income, and make payments on his loan or seek out alternative repayment programs[18] as required by the Ninth Circuit. *See United Student Aid Funds v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999) (plaintiff has the burden to prove that it would be "unconscionable" to require him to take steps to earn more money in the years to come). Hupp simply failed to meet his evidentiary burden on the issue of good faith.

//

//

---

[18] Hupp attempts to make an irrelevant argument regarding the William D. Ford Income Contingent Loan Program. Because the Bankruptcy Court did not rely on or mention this program in any way, Hupp's concerns about the program are entirely irrelevant to his appeal.

# VII.

## CONCLUSION

Hupp failed to meet his evidentiary burden in establishing undue hardship. ECMC respectfully asks this Court to affirm the Bankruptcy Court's decision holding Hupp's loans nondischargeable.

Dated: June 23, 2008            TIMOTHY P. BURKE & ASSOCIATES
                                A PROFESSIONAL CORPORATION


                                /s/ Timothy P. Burke
                                TIMOTHY P. BURKE
                                ATTORNEYS FOR
                                EDUCATIONAL CREDIT MANAGEMENT
                                CORPORATION

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. 32(a)(7)(B) AND 32(a)(5) & (6)
## FOR CASE NUMBER 08-CV-0414 H RBB

Pursuant to Fed. R. App. P.32(a)(7)(B) and 32(a)(5) & (6), I certify that the attached brief contains six thousand, three hundred and twenty-nine (6329) words, excluding the parts of the brief exempted by Fed. R. App. P.32(a)(7)(B)(iii) and is proportionately spaced using Word in Times New Roman with a typeface of 14 points.

DATED this 23rd day of June, 2008.

/s/ Timothy P. Burke
TIMOTHY P. BURKE
Attorneys for Defendant
EDUCATIONAL    CREDIT    MANAGEMENT
CORPORATION

2em

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 1136 Fremont Avenue, Suite 108, South Pasadena, California 91030, in said County and State. On **June 23, 2008**, I served the following document(s):

**DEFENDANT/APPELLEE EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S OPENING BRIEF**

on each of the interested parties: **SEE ATTACHED SERVICE LIST**

by the following means of service:

☒ **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. Under that practice it would be deposited with the U.S. Postal Service on that same date with postage thereon fully prepaid at South Pasadena, California in the ordinary course of business I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY PERSONAL SERVICE:** I provided a true copy of the above-listed document(s) to a messenger, employed by _____**(COURIER SERVICE NAME)**_____, along with an envelope(s) addressed to each person(s) named at the address(es) shown, and gave that document(s) to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☐ **BY FACSIMILE:** On_____ 2006, from South Pasadena, California, I caused each such document to be transmitted by facsimile machine, to the parties and numbers on the attached Service List. To the best of my knowledge, the transmission was reported as complete, and no error was reported by the facsimile machine. A copy of the transmission record is maintained by our office.

☐ **BY FEDERAL EXPRESS OR UNITED STATES POSTAL EXPRESS MAIL:** On the above-mentioned date, I placed a true copy of the above mentioned document(s), in a sealed envelope or package designated by either Federal Express or the United States Postal Service with delivery fees paid or provided for, addressed to the person(s) as indicated above and deposited same in a box or other facility regularly maintained by Federal Express or the United States Postal Service or delivered same to an authorized courier or driver authorized by Federal Express or the United States Postal Service to receive documents.

☒ I am employed by TIMOTHY P. BURKE & ASSOCIATES, A Professional Corporation, TIMOTHY P. BURKE, Esq., is a member of the bar of this court.

☐    (STATE)    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒    (FEDERAL)    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on **June 23, 2008**.


                              /s/ Timothy P. Burke
                              TIMOTHY P. BURKE

## SERVICE LIST

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA

### IN RE:  PAUL HUPP
### PAUL HUPP vs. ECMC, ET. AL.
### CH 7 CASE NO.  06-00198-PB / ADV NO 06-90127
### DIST. CT. CASE NO 08-CV-0414 H RBB

PLAINTIFF IN PRO SE

Paul Hupp

965 Hidden Oaks Drive

Beaumont, CA 92223