1    J. REED CLAY, JR.
     Trial Attorney
2    GREGORY G. KATSAS
     Acting Assistant Attorney General
3    J. CHRISTOPHER KOHN
     TRACY J. WHITAKER
4    1100 L Street NW
     Rm. 10008
5    Washington, DC 20005
     (202) 307-0958
6

7    Corporate / Financial Litigation Section
8    Commercial Litigation Branch
     Civil Division
9    U.S. Department of Justice
     P.O. Box 875
10   Ben Franklin Station
11   Washington, DC 20044

12   Attorneys for:
13   UNITED STATES OF AMERICA

14                      UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF CALIFORNIA
15

16   PAUL HUPP,                    )    CASE NO: 08-CV-0414 H
                                   )
17          Plaintiff,             )    BANKRUPTCY CASE NO: 06-90127-M7
                                   )
18   v.                            )    **UNITED STATES' RESPONSE TO**
                                   )    **APPELLANT'S OPENING BRIEF**
19                                 )    **ON APPEAL**
                                   )
20   EDUCATIONAL CREDIT            )
     MANAGEMENT CORPORATION, )
21                                 )
22          Defendant.             )
     _____)

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

MEMORANDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

I.   Section 523(a)(8) does not violate the Equal Protection or Substantive Due Process
     guarantees of the Fifth Amendment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
     A.   The proper standard of review is rational basis.. . . . . . . . . . . . . . . . . . . . . . -2-
          1.   Section 523(a)(8) does not infringe a fundamental constitutional
               right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
          2.   Section 523(a)(8) does not discriminate against a suspect
               class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     B.   Section 523(a)(8) is rationally related to a legitimate government interest.. . . . . -5-

II.  Common law contract doctrines do not have constitutional significance.. . . . . . . . . . . . -6-
     A.   Section 523(a)(8) is not constitutionally required to include a statute of
          limitations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
     B.   Section 523(a)(8) is not unconscionable.. . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
     C.   The United States' has not interfered with Mr. Hupp's ability to repay his loan. .-7-

III. Section 523(a)(8) is not void for vagueness.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

IV.  The imposition of collection costs under 20 U.S.C. 1091a does not violate the Eighth
     Amendment's ban on excessive fines.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

V.   Section 532(a)(8) is not unconstitutional retroactive legislation.. . . . . . . . . . . . . . . . . -10-
     A.   Section 523(a)(8) is not retroactive as applied to Mr. Hupp.. . . . . . . . . . . . . . -11-
     B.   To the extent that section 523(a)(8) is retroactive, it does not violate the Ex Post
          Facto Clause, the Contracts Clause or the Due Process Clause. . . . . . . . . . . . . -12-

VI.  Mr. Hupp's procedural claims lack merit.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
     A.   The bankruptcy court did not abuse its discretion in granting extensions of time to
          the United States.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
     B.   The United States did not engage in improper *ex parte* communications with the
          bankruptcy court.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
     C.   The bankruptcy court did not err in denying Mr. Hupp class certification.. . . . . . -15-

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re Ahrendt, 28 B.R. 329 (Bankr. E.D. Wis. 1983)............................. 12

In re Andrews, 661 F.2d 702 (8th Cir. 1981)................................... 3

Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S.
    252 (1977). ................................................................ 4

Austin v. United States, 509 U.S. 602 (1993). ................................. 9

Black v. Educational Credit Management Corp., 459 F.3d 796 (7th Cir.
    2006). ................................................................ 9, 10

Browning-Ferris Industrial of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257
    (1989).................................................................. 9

City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985). ................... 5

Cox Cable Communications, Inc. v. United States, 992 F.2d 1178 (11th
    Cir. 1993).............................................................. 13

Craft v. National Park Serv., 34 F.3d 918 (9th Cir. 1994)........................ 8

Dandridge v. Williams, 397 U.S. 471 (1970). ............................... 3, 6

Dodge v. Board of Education, 302 U.S. 74 (1937). ............................ 12

Doe v. Staples, 706 F.2d 985 (6th Cir. 1983). ................................. 8

Drobny v. CIR, 113 F.3d 670 (7th Cir. 1997). ................................ 14

FCC v. Beach Communications, Inc., 508 U.S. 307 (1993). ...................... 5

Matter of Flamini, 19 B.R. 303 (Bankr. E.D. Mich. 1982). ...................... 12

Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320 (10th Cir. 2000). ........... 15

Gonzalez v. Carhart, 127 S. Ct. 1610 (2007).................................. 8

Harris v. McRae, 448 U.S. 297 (1980). ...................................... 4

Heller v. Doe, , 509 U.S. 312 (1993)......................................... 5

Hudson County Welfare Dep't v. Roedel, 34 B.R. 689 (D.N.J.
    1983). ............................................................... 3, 11

Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450 (1988)....................... 2, 4

Kolender v. Lawson, 461 U.S. 352 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kyle v. Campbell Soup Co., 28 F.3d 928 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 14

Landgraf v. USI Film Products, 511 U.S. 244 (1994). . . . . . . . . . . . . . . . . . . . . . 11, 12

In re Lewis, 506 F.3d 927 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61 (1911). . . . . . . . . . . . . . . . . . . . . 6

McCleskey v. Kemp, 481 U.S. 279 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Merchant, 958 F.2d 738 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Morris, 21 B.R. 816 (Bankr. N.D. Iowa 1982). . . . . . . . . . . . . . . . . . . . . . . . . . 12

National R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe
    Ry. Co., 470 U.S. 451 (1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ortwein v. Schwab, 410 U.S. 656 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . 15

In re Pelkowski, 990 F.2d 737 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Phillips v. Tobin, 548 F.2d 408 (2d Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ry. Express Agency, Inc. v. New York, 336 U.S. 106 (1949).. . . . . . . . . . . . . . . . . . . . 6

Rodriguez v. Cook, 169 F.3d 1176 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Sch. Asbestos Litigation, 977 F.2d 764 (3d Cir. 1992). . . . . . . . . . . . . . . . . . 14, 15

Shapiro v. Thompson, 394 U.S. 618 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Shidaker v. Carlin, 782 F.2d 746 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Smith v. Doe, 538 U.S. 84 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Taylor v. Cisneros, 913 F. Supp. 314, 320 (D.N.J. 1995). . . . . . . . . . . . . . . . . . . . . . . 9

Thompson v. Poindexter, 798 F.2d 471 (6th Cir.1986). . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Bajakajian, 524 U.S. 321 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States ex rel. Schwartz v. TRW Inc., 118 F.Supp.2d 991 (C.D. Cal.
    2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. 100,348.00 in United States Currency, 354 F.3d 1110 (9th
    Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Halper, 490 U.S. 435 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Hudson, 14 F.3d 536 (10th Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . .   9

United States v. Kras, 409 U.S. 434 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Usery v. Turner Elkhorn Mining, Co., 428 U.S. 1 (1976). . . . . . . . . . . . . . . . . . . . . . .   13

Washington v. Davis, 426 U.S. 229 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

## DOCKETED CASES

Hupp v. Educational Credit Management Corp., No. 06-90127 (Bankr.
    S.D. Cal.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATUTES AND REGULATIONS

20 U.S.C. 1091a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

11 U.S.C. § 523(a)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549. . . . . . . . . . . . . . .   5

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. . . . . . . . . . . . . . . . . . . .   7

Education Amendments of 1976, Pub. L. No. 94-482, § 127(a), 90 Stat.
    2081. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

34 C.F.R. § 682.410(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

U.S. Const. Art 1, § 10, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

## SECONDARY RESOURCES

Charles B. Hochman, The Supreme Court and the Constitutionality of
    Retroactive Legislation, 73 Harv. L. Rev. 692, 692 (1960). . . . . . . . . . . . . . . . . . . .   12

COLLIER ON BANKRUPTCY § 523.14 (Alan J. Resnick & Henry J. Sommer eds., 15th ed.
    2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Comm'n on the Bankruptcy Laws of the United States, Report, H.R. Doc.
    No. 93-137. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

H.R. Rep. No. 99-383, at 41 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Restatement (Second) of Contracts, § 363 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

1

**MEMORANDUM**

2      The United States of America submits this Response to Appellant's Opening Brief on

3   Appeal ("Appellant's Brief").  This Response demonstrates that title 11 U.S.C. § 523(a)(8)

4   ("Section 523(a)(8)") and title 20 U.S.C. § 1091a ("Section 1091a") are valid and constitutional.

5   In particular, (i) Section 523(a)(8) does not violate the Fifth Amendment's Equal Protection or

6   Substantive Due Process guarantees; (ii) common law contract doctrines such as mutuality,

7   conscionability and unclean hands do not have constitutional force; (iii) Section 523(a)(8) is not

8   unconstitutionally vague; (iv) the imposition of collection costs under Section 1091a does not

9   violate the Excessive Fines Clause of the Eight Amendment, and (v) the amendments to Section

10   523(a)(8) are not impermissible retroactive legislation.  In addition, Mr. Hupp appeals on many

11   procedural grounds, several of which implicate the United States.  Those grounds are also

12   erroneous.

13

**STATEMENT OF FACTS**

14      This is an appeal from an adversary proceeding brought to determine the dischargeability

15   of the student loan debt Mr. Hupp, the Debtor and Appellant, acquired between 1986 and 1988,

16   under the Federal Family Educational Loans ("FFEL") program.  His three loans were

17   consolidated in 1991.  Debtor's Summary Judgment Memorandum at 2, <u>Hupp v. Educational</u>

18   <u>Credit Management Corp.</u>, No. 06-90127 (Bankr. S.D. Cal. Nov. 27, 2006), Dk. No. 52.  Under

19   the program, Mr. Hupp asked for and received forbearance and deferment of the loans beginning

20   in 1987, and lasting until 1998.  <u>Id.</u>  After 12 years with little service to the debt, the loan went

21   into default in January of 1998.  <u>Id.</u>  Once in default, Educational Credit Management

22   Corporation (a "Guaranty Agency") assumed the loan under the terms of the FFEL.  According

23   to Mr. Hupp, the balance due on the loan approximates $70,000.  <u>Id.</u> at 11.

24      On February 8, 2006, Mr. Hupp filed his petition for bankruptcy and commenced this

25   adversary proceeding to determine the dischargeability of his student loan debt.  <u>Id.</u> at 1.  He

26   filed his motion for summary judgment on November 27, 2006, alleging various constitutional

27

28                                    -1-

1   challenges. Debtor's Motion for Summary Judgment, No. 06-90127, Dk. No. 49. On April 16,

2   2006, the United States intervened to defend against the various constitutional challenges raised

3   by Mr. Hupp. Motion to Intervene, No. 06-90127, Dk. No. 110. Although, briefing was

4   completed on May 11, 2007, Mr. Hupp filed a supplemental brief in support of his motion for

5   summary judgment on October 19, 2007. Debtor's Supplemental Brief in Support of Motion for

6   Summary Judgment, No. 06-90127, Dk. No. 158. The United States moved to strike Mr. Hupp's

7   supplemental brief as untimely. United States' Motion to Strike, No. 06-90127, Dk. No. 162.

8   On November 29, 2007, the bankruptcy court heard oral argument on the United States' Motion

9   to Strike and, subsequently, Debtor's Motion for Summary Judgment. See Minute Order, No.

10   06-90127, Dk. No. 170. The bankruptcy court granted the United States' Motion to Strike and

11   denied the motion for summary judgment. Id.; Order (Jan. 9, 2008), No. 06-90127, Dk. No. 190.

12   On January 17, 2008, the bankruptcy court held a trial to determine the dischargeabilty of Mr.

13   Hupp's student loan debt. Minute Order, No. 06-90127, Dk. No. 194. The court ultimately

14   determined that Mr. Hupp did not meet his burden under the "undue hardship" test.

15   Memorandum Decision (Feb. 25, 2008), No. 06-90127, Dk. No. 197. Thereafter, Mr. Hupp filed

16   his Notice of Appeal on February 26, 2008. Notice of Appeal, No. 06-90127, Dk. No. 199.

17

**ARGUMENT**

18
I.     Section 523(a)(8) does not violate the Equal Protection or Substantive Due Process guarantees of the Fifth Amendment.

19

20     A.     The proper standard of review is rational basis.

21         Mr. Hupp incorrectly argues that his challenge to Section 523(a)(8) should be reviewed

22   under strict scrutiny. Strict scrutiny is appropriate only where a challenged statute infringes a

23   fundamental right or discriminates against a suspect class. Kadrmas v. Dickinson Pub. Sch., 487

24   U.S. 450, 457-58 (1988). Section 523(a)(8), as applied to Mr. Hupp, does neither. As such,

25   strict scrutiny does not apply.

26

27

28

-2-

1          1.    Section 523(a)(8) does not infringe a fundamental constitutional right.

2          Section 523(a)(8) excepts student loan debt from discharge unless doing so would cause

3    undue hardship to the debtor and his dependents.  Thus, for certain debtors, Section 523(a)(8)

4    limits a *statutorily* granted right.  But, the right to a discharge is not a fundamental constitutional

5    right.  United States v. Kras, 409 U.S. 434, 446 (1973) (holding that "[t]here is no constitutional

6    right to obtain a discharge of one's debts"); Hudson County Welfare Dep't. v. Roedel, 34 B.R.

7    689, 694 (D.N.J. 1983) ("*A fortiori*, he has no right to discharge of a specific obligation.").

8          Furthermore, contrary to Mr. Hupp's arguments, there is no constitutional right to the

9    basic necessities of life.  In the context of legislation that affects "the most basic economic needs

10   of impoverished human beings," the Supreme Court has held that "the Fourteenth Amendment

11   gives the federal courts no power to impose . . . their views of what constitutes wise economic or

12   social policy."  Dandridge v. Williams, 397 U.S. 471, 486 (1970).  In any event, whether Section

13   523(a)(8) would infringe any such putative right is dubious.  The very purpose of the "undue

14   hardship" exception is to ensure that those who truly cannot subsist if their student loan debt is

15   not discharged *can* receive a discharge.  See COLLIER ON BANKRUPTCY § 523.14 (Alan J.

16   Resnick & Henry J. Sommer eds., 15th ed. 2006); Comm'n on the Bankruptcy Laws of the

17   United States, Report, H.R. Doc. No. 93-137, pt. II, at 140-41 n.17 (1973) ("The total amount of

18   income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor

19   and [the debtor's] dependents, at a minimal standard of living within their management

20   capability, as well as to pay the educational debt."), quoted in In re Andrews, 661 F.2d 702, 704

21   (8th Cir. 1981).  In other words, Section 523(a)(8) honors the very "right" Mr. Hupp claims it

22   violates.

23         Mr. Hupp's reliance on Shapiro v. Thompson, 394 U.S. 618 (1969) is misplaced.  In

24   Shapiro, the Supreme Court applied strict scrutiny to a durational residency requirement, not

25   because the regulation affected the "basic necessities of life," but because it infringed the right to

26   interstate travel.  Id. at 637.  That right is not implicated by Section 523(a)(8).

27

28                                          -3-

2.    Section 523(a)(8) does not discriminate against a suspect class.

Mr. Hupp argues that Section 523(a)(8) should be subjected to strict scrutiny because it supposedly discriminates against the poor.  Appellant's Br. at 10.  But, the indigent are not a suspect class.  Kadrmas, 487 U.S. at 458; Harris v. McRae, 448 U.S. 297, 322-23 (1980); Ortwein v. Schwab, 410 U.S. 656, 660 (1973); see also Rodriguez v. Cook, 169 F.3d 1176, 1179 (9th Cir. 1999).

Mr. Hupp also incorrectly asserts that Section 523(a)(8) discriminates against racial minorities.[1]   Nothing in the text of the statute references race in any way.  11 U.S.C. § 523(a)(8).  Mr. Hupp argues that Section 523(a)(8) has a disparate impact upon racial minorities.  Appellant's Br. at 11-16.  However, courts "have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another."  Washington v. Davis, 426 U.S. 229, 242 (1976).  That notwithstanding, this is precisely what Mr. Hupp urges this court to do.

To trigger strict scrutiny, "the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose."  Id. at 240.  Ordinarily, statistical evidence of disparate effect is insufficient to show such discriminatory purpose.  See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977).  The statistical proof must evidence a "stark" pattern of discriminatory effect.  See id.  Even accepting the statistics cited by Mr. Hupp at face value, a "stark" pattern does not emerge.

Furthermore, even if discriminatory intent could be inferred from the statistics provided by Mr. Hupp, he would still bear the burden of showing that "the purposeful discrimination had a discriminatory effect on him."  See McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (quotations omitted).  Mr. Hupp does not explain how *he* has been the victim of some discriminatory intent.

---

[1]This argument was first raised by Mr. Hupp in his Supplemental Brief on Summary Judgment, Dk. No. 158, which was struck from the record by the bankruptcy court, Order, No. 06-90127,Dk. No. 190.   Nevertheless, we address the merits of Mr. Hupp's arguments here.

-4-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    B.     Section 523(a)(8) is rationally related to a legitimate government interest.

When reviewing a constitutional challenge under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). The heavy burden of negating every conceivable rational basis falls upon the party challenging the statute. FCC v. Beach Communications, Inc., 508 U.S. 307, 314-15 (1993).

Congress originally limited the discharge of student loan debt in the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (codified as amended at 11 U.S.C. §§ 101-1532 (2006)), because of the rising rate of defaults on student loan debts, In re Pelkowski, 990 F.2d 737, 742 (3d Cir. 1993). Congress enacted this and subsequent amendments broadening the scope of the exception "to prevent abuses in and protect the solvency of the educational loan programs." In re Merchant, 958 F.2d 738, 742 (6th Cir. 1992). In effect, Congress determined that protecting the student loan program by making such loans nondischargeable outweighed an individual's interest in a discharge through bankruptcy. Id. at 740. The federal student loan program provides low-cost loans to students who frequently are not credit-worthy borrowers and helps make higher education financially feasible to all those who seek it. Congress's decision to maintain the solvency of the federal student loan program by limiting a debtor's statutorily granted right to discharge such loans in bankruptcy is eminently rational.

Mr. Hupp mounts two challenges to this rationale. First, he contends that Congress did not flesh out a rationale for the legislation before it passed, relying instead on "anecdotal examples," Appellant's Br. at 16, and insufficient debate, Appellant's Br. at 17. Here, Mr. Hupp's characterization of rational basis review is flawed. The nature and extent of Congress's deliberations is irrelevant to rational basis review. Beach Communications, 508 U.S. at 315 (the absence of legislative facts or congressional record is not relevant to a rational-basis analysis). Moreover, the government is not required to prove that Congress actually considered the rationale for the statute that the government is advancing before the court. See Heller v. Doe,

-5-

509 U.S. 312, 320 (1993). Instead, Mr. Hupp must counter all possible rationales for the statute "whether or not the basis has a foundation in the record." Id. at 320-21. This is a burden he cannot carry.

Second, Mr. Hupp contends that in Section 523(a)(8) Congress crafted a poor solution to the problems it sought to address. He claims that Congress lumped too many debtors in with those who were abusing the privilege of bankruptcy and thus "took a sledgehammer approach to a problem that required a fly swatter [sic]." Appellant's Br. at 17. Mr. Hupp again mischaracterizes rational basis review. The Supreme Court has repeatedly held that, when Congress is attempting to decide to whom to extend a law, "it does not offend the Constitution simply because the classification [Congress draws] 'is not made with mathematical nicety or because in practice it results in some inequality.'" Dandridge, 397 U.S. at 485 (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911)). Furthermore, it would not matter if Section 523(a)(8) did not on its own "lead to a significant increase in the availability of private student loans." Appellant's Br. at 17. Many problems might be threatening the solvency of the student loan program, but "[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." Ry. Express Agency, Inc. v. New York, 336 U.S. 106, 110 (1949).

II.    Common law contract doctrines do not have constitutional significance.[2]

    A.    Section 523(a)(8) is not constitutionally required to include a statute of limitations.

Mr. Hupp argues that Section 523(a)(8) violates a constitutionally imposed requirement of "mutuality of contract." Appellant's Br. at 18. Mr. Hupp did not make this argument before the bankruptcy court, so the argument has been waived. Nevertheless, the argument has no basis

---

[2] In cases such as this one, title 28 U.S.C. § 2403(a) grants the United States the right to intervene only to defend the constitutionality of a statute. The arguments made by Mr. Hupp in this section do not seem to be grounded in the Constitution. However, because they are cast in a constitutional guise, the United States responds to the substance of those arguments here.

-6-

1  in the Constitution.  Mr. Hupp appears to argue that his loan is unenforceable because he and his

2  creditor do not have access to the same remedy.  As the Second Restatement of Contracts makes

3  clear, however, "the law does not require that the parties have similar remedies in case of breach

4  . . . ."  Restatement (Second) of Contracts, § 363 (1979).  As such, Mr. Hupp's claim is without

5  foundation in either the Constitution or contract law.

6         B.       <u>Section 523(a)(8) is not unconscionable.</u>

7         Mr. Hupp argues that the penalties imposed by the terms of his student loan contract are

8  unconscionable.  Appellant's Br. at 19.  As above, Mr. Hupp did not make this argument before

9  the bankruptcy court, and so, the argument has been waived.  Again, Mr. Hupp's argument is

10  tied to no provision of the U.S. Constitution.  Instead, he seems to argue that student loan

11  contract is unenforceable because the terms are unconscionable.  However, collection costs and

12  penalties are commonly imposed on debtors who are in default.  Thus, irrespective of the legal

13  deficiencies of Mr. Hupp's argument, Congress's decision to impose collection costs cannot be

14  viewed as unconscionable.[3]

15         C.       <u>The United States' has not interfered with Mr. Hupp's ability to repay his loan.</u>

16         Mr. Hupp argues that the United States in some way interfered with his ability to pay

17  back his loan.  Appellant's Br. at 20.  Whatever the legal basis for his claim, Mr. Hupp cites no

18  evidence that the United States has frustrated his ability to repay his loan.  Instead, he has

19  alleged that the California Commission on Teacher Credentialing, a state body, has made it more

20  difficult to repay his loan by denying him a teaching credential.  Appellant's Br. at 20.  Even if

21  these arguments had any basis in law or fact, the United States is not responsible for the actions

22  of a state.

23

24

25  _____

26       [3] The provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, and
the California Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§ 1788-1788.33

27  are immaterial.

28                              -7-

1    III.    Section 523(a)(8) is not void for vagueness.

2        This argument was first raised by Mr. Hupp in his Supplemental Brief in Support of

3    Summary Judgment, Dk. No. 158, that the bankruptcy court struck.  Order, No. 06-90127, Dk.

4    No. 190.  As such, this issue is not ripe for appeal.  His argument is also inapt.  The void for

5    vagueness doctrine most commonly applies in criminal and First Amendment cases.  See, e.g.,

6    Gonzalez v. Carhart, 127 S. Ct. 1610, 1628 (2007) ("As generally stated, the void-for-vagueness

7    doctrine requires that a *penal* statute define the *criminal* offense with sufficient definiteness that

8    ordinary people can understand what conduct is prohibited and in a manner that does not

9    encourage arbitrary and discriminatory enforcement." (quoting Kolender v. Lawson, 461 U.S.

10   352, 357 (1983) (emphasis added)).

11       Still, courts occasionally entertain challenges to civil statutes under a much more relaxed

12   standard: "[w]hen a statute is not concerned with criminal conduct or first amendment

13   considerations, the court must be fairly lenient in evaluating a claim of vagueness. . . .

14   [U]ncertainty in this statute is not enough for it to be unconstitutionally vague; rather, it must be

15   substantially incomprehensible." Doe v. Staples, 706 F.2d 985, 988 (6th Cir. 1983) (internal

16   citations omitted); see also Craft v. National Park Serv., 34 F.3d 918, 922 (9th Cir. 1994) (noting

17   that the standard for evaluating civil sanctions is more lenient than the standard for evaluating

18   criminal laws).  While the undue burden standard does leave room for judges to make equitable

19   determinations regarding a debtor's financial means, the standard is hardly incomprehensible.

20   As such, Section 523(a)(8) is not void for vagueness.

21

22   IV.    The imposition of collection costs under 20 U.S.C. 1091a does not violate the Eighth
            Amendment's ban on excessive fines.

23       Mr. Hupp incorrectly argues that the fees and penalties that have been assessed on his

24   outstanding student loan debt are excessive under the Eight Amendment.[4]   The Excessive Fines

25

26       [4] Mr. Hupp's arguments here bear on the total amount of, not the dischargeability of, his

27   student loan debt.

28                                          -8-

1   Clause limits the ability of the government "to extract payments, whether in cash or in kind, 'as

2   *punishment* for some offense.'" <u>Austin v. United States</u>, 509 U.S. 602, 609-10 (1993) (quoting

3   <u>Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 265 (1989)) (emphasis

4   in original).  While a statute need not serve solely retributive or deterrent purposes to be

5   considered punishment, the actual purposes served by the fine, not the fine's impact or effect,

6   determine whether the fine is remedial or punitive.  <u>See</u> <u>United States v. Halper</u>, 490 U.S. 435,

7   447 n. 7 (1989) (noting that whether a fine constitutes punishment is not "determined from the

8   defendant's perspective"); <u>United States v. Hudson</u>, 14 F.3d 536, 542 (10th Cir. 1994) (noting

9   that simply carrying the "sting of punishment" does not make a remedial measure punitive).  As

10  such, to determine the purposes served by a measure, courts have typically examined the

11  legislative history rather than relying on the effect of the measure.  <u>Taylor v. Cisneros</u>, 913 F.

12  Supp. 314, 320 (D.N.J. 1995).

13         The collection costs charged to debtors in default by Section 1091a (and its implementing

14  regulations) do not serve punitive purposes and, therefore, do not implicate the Eighth

15  Amendment.  The legislative history of § 1091a demonstrates that it was designed not with a

16  punitive purpose, but rather with a remedial one: "to reduce collection costs."  H.R. Rep. No. 99-

17  383, at 41 (1985).[5]  In other words, "the borrowers themselves, not the taxpayers, should bear the

18  reasonable costs of collecting student loans in default."  <u>Black v. Educational Credit</u>

19  <u>Management Corp.</u>, 459 F.3d 796, 800 (7th Cir. 2006).

20

21  _____

22         [5] The sentence quoted refers to the purpose of several amendments that were included in
    the bill.  In its entirety, it states: "H.R. 3700 contains a series of amendments designed to
23  improve debt collection activities and default recoveries, and to reduce collection costs and
    program abuse under the student loan programs administered by the Department of Education."
24  H.R. Rep. No. 99-383, at 41.  While the sentence does mention the purpose of reducing program
    abuse, that purpose likely refers to the inclusion of other amendments which provide for: (i)
25  "audits of guaranty agencies at least once every two years, allowing the Department of
    Education to recover funds determined to be owed to it by such audits" and (ii) "civil *penalties*
26  of up to $25,000 on lender and guaranty agencies found to be in noncompliance with the Higher
    Education Act."  <u>See</u> <u>id.</u> at 42 (emphasis added).

27

28                                              -9-

Should this court view the collection costs imposed by § 1091a as a punitive fine, Mr. Hupp argues that they are excessive because he now owes approximately $70,000 on a $7,300 loan. In United States v. Bajakajian, the Supreme Court held that a fine must be "grossly disproportionate" to the offense to be excessive. 524 U.S. 321, 336 (1998). The Ninth Circuit has identified four key, but not exhaustive factors, to consider when determining whether a fine is excessive: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." United States v. 100,348.00 in United States Currency, 354 F.3d 1110, 1122 (9th Cir. 2004). To conduct any such analysis under these factors would be difficult because collection fees are so far removed from the criminal context. It is more productive to note that most private loans, including mortgages and credit cards, assess fees if a borrower does not pay on time. Furthermore, 34 C.F.R. § 682.410(b)(2) represents a reasonable effort to recoup the collection costs expended by the Department of Education.[6] Black, 459 F.3d at 800. Even if Congress had chosen an alternate method of assessing collection costs, different "inequities" would have resulted. For instance, had Congress decided to assess a flat fee to each account in default (instead of assessing a proportional fee), some debtors would face collection costs disproportionate to the amount of their outstanding balance.

V.    Section 532(a)(8) is not unconstitutional retroactive legislation.

Mr. Hupp argues that the amendments to Section 523(a)(8) in 1990 and 1998, retroactively affected his right to a discharge and are, therefore, unconstitutional. As originally enacted, Section 523(a)(8) made student loan debt nondischargeable for a period of five years

---

[6] 34 C.F.R. § 682.410(b)(2) states in relevant part: "the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which it has paid a default or bankruptcy claim . . . the amount charged a borrower must equal the lesser of– (i) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or (ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education."

-10-

1  (excluding any period of time during which repayment was suspended) beginning on the date of

2  the commencement of the repayment period.  Education Amendments of 1976, Pub. L. No.

3  94-482, § 127(a), 90 Stat. 2081.  In 1990, Congress changed the nondischargeability period from

4  five years to seven years.  In 1998, Congress changed the time period to an indefinite period of

5  time.  These changes, however, affected no vested right of Mr. Hupp.  As such, the provisions

6  are not retroactive as applied to him.  Furthermore, even if the amendments did retroactively

7  affect his rights, they do not violate the Constitution's limited restrictions on such legislation.

8

9         A.       <u>Section 523(a)(8) is not retroactive as applied to Mr. Hupp.</u>

10         This case presents no issue of retroactivity.  Retroactive legislation is legislation that

11  "takes away or impairs vested rights acquired under existing laws, or creates a new obligation,

12  imposes a new duty, or attaches a new disability, in respect to transactions or considerations

13  already past . . . ."  <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 269 (1994).  In other words,

14  the legislation must attach new legal significance to events that were completed before the

15  passage of the legislation.  <u>Id.</u> at 269-70.  A statute is not retroactive merely because it upsets

16  expectations based in prior law.  <u>Id.</u> at 269.

17         The amendments to Section 523(a)(8) altered no rights that had vested in Mr. Hupp.  He

18  mistakenly concludes that the amendments to Section 523(a)(8) altered his rights under the

19  student loan agreements.  The amendments did alter or change the rights granted under the

20  Bankruptcy Code to *future* student loan debtors (such as Mr. Hupp) by limiting the

21  dischargeability of student loan debt.  But, the right to a discharge does not vest until the date of

22  discharge.  <u>Hudson County</u>, 34 B.R. at 694 ("Since the right to discharge is entirely a creation of

23  statute, a debtor who has not yet received his discharge under the statute has no vested right in

24  having the law remain as it was at the time he filed his petition.").[7]  In turn, Mr. Hupp's

25        [7] Not all courts agree that the statutorily created right to a discharge vests on the date of

26  discharge.  Some courts have held that a debtor's right to a discharge vests when he files his

                                            (continued...)

27

28                                          -11-

1    derivative right to a discharge of his student loan debt does not vest until the discharge is

2    granted.[8]

3         Mr. Hupp urges this court to consider National R.R. Passenger Corp. v. Atchison, Topeka

4    and Santa Fe Ry. Co., 470 U.S. 451 (1985). That case holds "that absent some clear indication

5    that the legislature intends to bind itself contractually, the presumption is that 'a law is not

6    intended to create private contractual or vested rights but merely declares a policy to be pursued

7    until the legislature shall ordain otherwise.'" Id. at 465-66 (quoting Dodge v. Board of

8    Education, 302 U.S. 74, 79 (1937)). Nothing in the Bankruptcy Code manifests a clear intention

9    of the legislature to bind itself contractually. At most, the amendments to Section 523(a)(8) may

10   have upset Mr. Hupp's expectations under the prior law. They have not, however, retroactively

11   altered his vested rights.

12

13        B.    To the extent that section 523(a)(8) is retroactive, it does not violate the Ex Post
               Facto Clause, the Contracts Clause or the Due Process Clause.

14        Mr. Hupp complains that Section 523(a)(8) violates the Ex Post Facto Clause, the

15   Contracts Clause, and the Due Process Clause. Those arguments are misplaced. The mere fact

16   that legislation is retroactive does not render it unconstitutional. Landgraf, 511 U.S. at 267-68.

17   Retroactive legislation "often serve[s] entirely benign and legitimate purposes, whether to

18   _____

19   (continued...)

20   petition and, thus, the applicable law is the law which is in effect at the time the petition is filed.
     E.g., In re Ahrendt, 28 B.R. 329 (Bankr. E.D. Wis. 1983); In re Morris, 21 B.R. 816 (Bankr.

21   N.D. Iowa 1982); Matter of Flamini, 19 B.R. 303 (Bankr. E.D. Mich. 1982). This does not,
     however, change the fact that the amendments to Section 523(a)(8) altered none of Mr. Hupp's

22   vested rights. Mr. Hupp did not file his petition until after the enactment of the latest
     amendment to Section 523(a)(8).

23

24   [8]"Perhaps the fundamental reason why retroactive legislation is suspect stems from the
     principle that a person should be able to plan his conduct with reasonable certainty of the legal

25   consequences . . . ." Charles B. Hochman, The Supreme Court and the Constitutionality of
     Retroactive Legislation, 73 Harv. L. Rev. 692, 692 (1960). To hold as Mr. Hupp urges would

26   suggest that student loan debtors have, from the time they enter into a student loan agreement,
     the right to anticipate and plan for the discharge of those loans in bankruptcy. The correct view

27   is that the amendments were not retroactive at all.

28                                              -12-

respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, *or simply to give comprehensive effect to a new law Congress considers salutary*." Id. (emphasis added). Indeed, the Constitution's limitations on retroactive legislation are limited in scope. See id. at 267.

The Ex Post Facto Clause prohibits the retroactive application of *penal* legislation (not civil law) unless the statutory scheme is so punitive that it negates the intention to deem it civil. Smith v. Doe, 538 U.S. 84, 92 (2003). The bankruptcy system established under title 11 is anything but punitive. Instead, the bankruptcy system offers debtors whose debts outweigh their assets a "fresh start."

Similarly, Section 523(a)(8) does not implicate the Contracts Clause. The Contracts Clause does not apply to the federal government. See U.S. Const. Art 1, § 10, cl. 1 ("No *State* shall . . . pass any . . . Law impairing the Obligation of Contracts.") (emphasis added); Cox Cable Communications, Inc. v. United States, 992 F.2d 1178, 1182 (11th Cir. 1993) (holding that the Contracts Clause does not limit the power of the federal government); In re Lewis, 506 F.3d 927, 931-32 (9th Cir. 2007) (Congress has the power under the Bankruptcy Clause to impair contractual obligations).

Finally, "Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Usery v. Turner Elkhorn Mining, Co., 428 U.S. 1, 15 (1976) (finding that an Act which required coal mines to compensate disabled mine-workers who terminated their employment prior to the enactment of the act did not violate due process). The amendments to Section 523(a)(8) do not violate due process. Lewis, 506 F.3d at 932-33 (debtor's Fifth Amendment challenge to the amendments to Section 523(a)(8) failed because he was not deprived of any property interest). As discussed, *supra* Part I.B., Congress's amendments to Section 523(a)(8) represent its

-13-

legitimate desire to further restrict the ability of student loan debtors to receive a discharge in order to maintain the viability of the federal student loan program.

VI.    Mr. Hupp's procedural claims lack merit.

    A.    The bankruptcy court did not abuse its discretion in granting extensions of time to the United States.

Extensions of time granted by the court under Fed. R. Civ. P. 6(b) are reviewed for abuse of discretion. Kyle v. Campbell Soup Co., 28 F.3d 928, 930 (9th Cir. 1994). Although Mr. Hupp argues that the extensions given to the United States caused him unnecessary expense Appellant's Br. at 9, he does not explain how the bankruptcy court abused its discretion in granting the extensions or how the extension affected the outcome of the proceeding.

    B.    The United States did not engage in improper *ex parte* communications with the bankruptcy court.

Mr. Hupp argues that a conversation between counsel for the United States and the bankruptcy court's courtroom deputy regarding the re-scheduling of a hearing was improper. Appellant's Br. at 9. But, *ex parte* communication with a party is prohibited only when it concerns the merits of a pending lawsuit. Drobny v. CIR, 113 F.3d 670, 680 (7th Cir. 1997). Thus, *ex parte* communications between the court and a party regarding administrative matters such as scheduling issues are permissible. See id. ("[*E*]*x parte* communication which does not concern the *merits* of the case is permissible."); In re Sch. Asbestos Litig., 977 F.2d 764, 789 (3d Cir. 1992) ("[*Ex parte* communications] are tolerated of necessity, however, where related to non-merits issues, for administrative matters, and in emergency circumstances."). Here, the communication was not improper because it covered only administrative matters (i.e., the scheduling of a hearing on Mr. Hupp's motion for summary judgment). See Drobny, 113 F.3d at 680. In addition, the communication did not prejudice Mr. Hupp because the Court also considered his personal calendar when scheduling the hearing. See Debtor's Notice of Improper *Ex Parte* Communications at 2, October 15, 2007, No. 06-90127, Dk. No. 155 ("Mr. Hupp . . . requested a motion [sic] date for October 2007."); Shidaker v. Carlin, 782 F.2d 746, 752 (7th

-14-

1    Cir. 1986) ("Not every *ex parte* communication is a procedural defect so substantial and so

2    likely to cause prejudice that it entitles the claimant to an entirely new administrative

3    proceeding."); <u>Sch. Asbestos Litig.</u>, 977 F.2d at 789 (holding that not all *ex parte*

4    communications actually prejudice another party).  Moreover, given his failure to ask for any

5    relief whatsoever, even Mr. Hupp seems to be aware that he was not prejudiced by the

6    conversation.

7         C.    <u>The bankruptcy court did not err in denying Mr. Hupp class certification.</u>

8         *Pro se* litigants are prohibited from representing a class of plaintiffs.  <u>Fymbo v. State</u>

9    <u>Farm Fire & Cas. Co.</u>, 213 F.3d 1320, 1321 (10th Cir. 2000); <u>Phillips v. Tobin</u>, 548 F.2d 408,

10   413 (2d Cir. 1976); <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 (4th Cir. 1975); <u>United States ex</u>

11   <u>rel. Schwartz v. TRW Inc.</u>, 118 F.Supp.2d 991 (C.D. Cal. 2000); <u>see also</u> <u>Thompson v.</u>

12   <u>Poindexter</u>, 798 F.2d 471 (6th Cir.1986) (applying this rule to *pro se* prisoners).  Mr. Hupp "may

13   bring his own claims to federal court without counsel, but not the claims of others."  <u>Fymbo</u>, 213

14   F.3d at 1321.

15                              **CONCLUSION**

16        The United States respectfully requests that this Court affirm the judgment of the

17   bankruptcy court.

18   DATED:    June 23, 2008

19                                          Respectfully submitted:

20                                           /s/ J. Reed Clay, Jr.
                                            J. REED CLAY, JR.
21                                          Trial Attorney
                                            GREGORY G. KATSAS
22                                          Acting Assistant Attorney General
                                            J. CHRISTOPHER KOHN
23                                          TRACY J. WHITAKER

24                                          Attorneys for:
                                            The UNITED STATES of AMERICA

25

26

27

28                              -15-