1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 PAUL HUPP ,                          CASE NO. 08-CV-0414 H (RBB)

12              Plaintiff/Appellant,    **ORDER AFFIRMING ON**

13       vs.                         **APPEAL DECISION OF**
                                          **BANKRUPTCY COURT**

14 EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,

15               Defendant/Appellee.

16

17       On March 3, 2008, plaintiff/appellant Paul Hupp ("Plaintiff") filed a notice of appeal

18 to the district court regarding the decision of the bankruptcy court following a trial on

19 Plaintiff's complaint seeking discharge of his student loans pursuant to 11 U.S.C. § 523(a)(8).

20 (Doc. No. 1.)  On May 16, 2008, Plaintiff filed a brief setting forth the grounds he asserts for

21 relief on this appeal.  (Doc. No. 21.)  Defendant/appellee filed a responsive brief on June 23,

22 2008.  (Doc. No. 32.)  The United States, which is a party in interest since Plaintiff's appeal

23 challenges the constitutionality of federal statutes, filed a responsive brief on June 23, 2008.

24 (Doc. No. 32.)  Plaintiff filed a reply brief on June 26, 2008.  (Doc. No. 34.)

25       The Court continues to conclude that this matter is appropriate for resolution without

26 oral argument pursuant to the Court's discretion under Local Civil Rule 7.1(d)(1).  (See Doc.

27 No. 16.)  For the reasons discussed below, the Court affirms the decision of the bankruptcy

28 court.

## **Background**

The following description of the loans at issue and Plaintiff's educational and occupational background is taken from Plaintiff's filings in the bankruptcy court, primarily Plaintiff's complaint.

### Plaintiff's Student Loans

Plaintiff earned a bachelors degree in education in 1987. (Compl. ¶ 7.) To finance that education, Plaintiff obtained three federally subsidized student loans in a total amount of $7,300. (Id. ¶ 8.) In 1991, Plaintiff consolidated the three loans into a single loan from United Student Aid Funds, Inc. (Id. ¶ 12.)

From approximately May of 1987 until 1998, Plaintiff successfully requested forbearance or deferment of the loans or the consolidated loan. (Id. ¶ 13.) The forbearances or deferments ended January 1, 1998, at which point Plaintiff determined that he could not pay the consolidated loan and it went into default. (Id.) In 2006, when Plaintiff filed his adversary action in the bankruptcy court, he stated that the consolidated loan totaled approximately $60,000. (Id. ¶ 100.)

### Plaintiff's Educational Background and Work History

Plaintiff completed his core teacher credentialing classes in June, July and August of 1987. (Compl. ¶ 17.) To receive a clear teaching credential enabling him to become a full-time teacher at a California public school, Plaintiff was required to complete his student teaching and pass a background check to receive a Certificate of Clearance. (Id. ¶ 18.)

On August 18, 1987, Plaintiff filed an application for a Certificate of Clearance with the California Commission on Teacher Credentialing. (Id. ¶ 24.) On August 24, 1988, that body declined to issue Plaintiff a certificate of clearance. (Id. ¶ 27.) Plaintiff suggests that this was due at least in part to the fact that on October 5, 1982, Plaintiff entered a plea of nolo contendere to a charge of contributing to the delinquency of a minor in violation of California Penal Code § 272. (Compl. ¶ 15.) Without a certificate of clearance, Plaintiff was unable to secure a full time teaching position. Plaintiff does not state whether he completed his student teaching requirement.

1        Plaintiff states that from August 1988 until September 1989 he worked part time at a

2    grocery store, earning "minimum, or near minimum, wage." (Compl. ¶¶ 33-34.) Plaintiff

3    states that he requested a full time position but that "the wait for such a position was

4    extensive." (Id. ¶ 33.) From September 1989 until March 1991, Plaintiff worked other part

5    time jobs that paid wages similar to his position at the grocery store. (Id. ¶ 35.) In March

6    of 1991, Plaintiff took a position as a sales agent with a food services company. (Id. ¶ 36.)

7    That position paid benefits and Plaintiff earned commission. Plaintiff states that he quit

8    that position in March of 1992. (Id.)

9        In April 1992, Plaintiff began working at a coffee company for an annual salary of

10    approximately $25,000. (Compl. ¶ 37.) Plaintiff states that he used the income from that

11    position to pay off credit card debt, which carried a higher interest rate than Plaintiff's

12    consolidated student loan. (Id. ¶ 38.) After six months, however, Plaintiff was fired due to

13    what he described as "willful and unlawful conduct" by his employer that "created

14    conflict" with Plaintiff. (Id. ¶ 39.) From July 1993 until August 1995, Plaintiff worked as

15    a real estate sales agent for three different companies. (Id. ¶¶ 41-43.) Plaintiff states that

16    he was unemployed from August 1995 until December 1996. (Id. ¶ 44.)

17        In December 1996, Plaintiff secured a substitute teaching position. (Compl. ¶ 45.)

18    He states that the pay was $85 per day. (Id. ¶ 46.) In January 1997, Plaintiff secured a

19    second substitute teaching position, which paid $80 per day and at which he could work on

20    any day he was not employed by the first school district. (Id. ¶ 48.) Plaintiff states that he

21    "worked on an almost daily basis" at these two positions. (Id. ¶ 49.) Plaintiff used the

22    income from these positions to again pay down credit card debt, and did not make any

23    payments on his student loan. (Id. ¶ 50.)

24        In March 1997, Plaintiff was offered a full-time teaching position, although the

25    position lasted only until the end of that academic year because it was a temporary vacancy

26    due to another employee's maternity leave. (Compl. ¶ 51.) Plaintiff states that he worked

27    in this position and received excellent performance reviews until June 1997 when he was

28    placed back in the substitute teaching pool. (Id. ¶ 53.)

1    During the summer and fall of 1997, Plaintiff completed some of the required

2    teacher credentialing classes in an attempt to obtain a clear teaching credential.  (Id. ¶ 55.)

3    In October 1997, Plaintiff's application for a teaching permit was denied by the California

4    Commission on Teacher Credentialing.  (Id. ¶ 62.)  Plaintiff states that, as a result, he no

5    longer could work as a teacher either in a substitute or full-time capacity.  As noted above,

6    Plaintiff defaulted on his consolidated student loan in January 1998.

7    Plaintiff's complaint provides little to no information regarding his employment

8    status from 1998 to the present time.  Plaintiff also provided no information regarding his

9    expenses.  Plaintiff states that for at least the past several years, the number of hours he has

10   devoted to pro se litigation involving the California Commission on Teacher Credentialing,

11   the present bankruptcy case[1] and other litigation essentially foreclosed a full-time, or even

12   part-time, job.  In 2003, Plaintiff received a law degree.

13   <u>Procedural Background of This Case</u>

14   On February 8, 2006, Plaintiff filed a complaint against United Student Aid Funds,

15   Inc. for discharge of Plaintiff's student loan debt pursuant to 11 U.S.C. § 523(a)(8).  (Bk.

16   Doc. No. 1.[2])  Plaintiff's complaint asserted that, as of the time of filing, the student loan

17   debt at issue was approximately $60,000.  (Compl. ¶ 101.)  On March 9, 2006, Educational

18   Credit Management Corporation ("ECMC") filed an answer to Plaintiff's complaint.  (Bk.

19   Doc. No. 5.)  The answer was filed by ECMC rather than United Student Aid Funds, Inc.

20   because United Student Aid Funds, Inc. was in the process of transferring the student loans

21   it held to ECMC.  (See Answer at 2 n. 1.)  On July 24, 2006, the bankruptcy court granted

22   ECMC's motion to substitute in as the real party in interest on behalf of named defendant

23   United Student Aid Funds, Inc. pursuant to Fed. R. Civ. P. 25(c) and Fed. R. Bk. P.

24   7025(c).  (Bk. Doc. Nos. 12, 19, 23.)

25   On November 27, 2006, Plaintiff filed a motion for summary judgment in his favor.

26   _____

27   [1]    At trial before the bankruptcy court, Plaintiff testified that he has spent over three
thousand hours trying to have his student loan discharged.

28   [2]    Unless otherwise noted, all "Bk. Doc." citations refer to the docket in the bankruptcy
court adversary proceeding, Case No. 06-90127-JM.

1    (Bk. Doc. No. 49.)  Plaintiff's motion was opposed by ECMC.  (Bk. Doc. Nos. 61, 63.)

2    The United States also filed a response in opposition, since Plaintiff's motion raised

3    constitutional challenges.  (Bk. Doc. No. 115.)  The bankruptcy court scheduled a hearing

4    on Plaintiff's motion on June 22, 2007.  (Bk. Doc. No. 124.)

5        On May 28, 2007, less than one month before the scheduled hearing on Plaintiff's

6    motion for summary judgment, Plaintiff filed a motion to transfer the case to the district

7    court.  (Bk. Doc. No. 123.)  Plaintiff's motion also sought declaratory relief and injunctive

8    relief, class action certification, and leave to add United States Secretary of Education

9    Margaret Spellings as a defendant.  (Id.)  One day later, on May 29, 2007, Plaintiff filed a

10   motion to set a trial date.  (Bk. Doc. No. 125.)

11       On June 19, 2007, the bankruptcy court stayed the proceedings so that the district

12   court could decide Plaintiff's motion to transfer, which the bankruptcy court considered as

13   a motion to withdraw the automatic reference.  (See Bk. Doc. No. 141.)  Both ECMC and

14   the United States filed oppositions to the motion, and on July 3, 2007 the motion was

15   transferred to the district court pursuant to 28 U.S.C. § 157(d).  (District Court Case No.

16   07-CV-1232 WQH (NLS).)  On September 13, 2007, this Court denied Plaintiff's motion

17   to withdraw the reference and remanded the case to the bankruptcy court.  (Case No. 07-

18   CV-1232 WQH (NLS), Doc. No. 17.)

19       On November 29, 2007, the bankruptcy court held a hearing on Plaintiff's motion

20   for summary judgment.  (See Bk. Doc. No. 170, 190.)  The Court denied Plaintiff's motion

21   for summary judgment and set a trial date of January 17, 2008.  (Bk. Doc. No. 190.)  The

22   bankruptcy court's order specified that the trial would be "limited to the issue of undue

23   hardship under 11 U.S.C. § 523(a)(8)."  (Id.)

24       On January 17, 2008, the bankruptcy court held a trial on Plaintiff's claim for a

25   hardship discharge.  (Bk. Doc. No. 194.)  On February 25, 2008, the bankruptcy court

26   issued a memorandum decision concluding that Plaintiff failed to meet his burden to

27   establish that excepting Plaintiff's student loan debt from his discharge would constitute an

28   undue hardship.  (Bk. Doc. No. 197.)  Plaintiff has appealed that decision to this Court.

**<u>Discussion</u>**

This Court has jurisdiction over Plaintiff's appeal pursuant to 28 U.S.C. § 158(a). For the following reasons, the Court affirms the decision of the bankruptcy court.

**I.    Standards of Review**

The bankruptcy court's determination regarding whether repayment of a student loan debt would constitute an undue hardship is a legal question that this Court reviews de novo. <u>Rifino v. United States (In re Rifino)</u>, 245 F.3d 1083, 1086-87 (9th Cir. 2001); <u>see</u> <u>Penn. Higher Educ. Assistance Agency v. Birrane (In re Birrane)</u>, 287 B.R. 490, 493 (9th Cir. B.A.P. 2002).  Similarly, the Court reviews de novo other legal determinations made by the bankruptcy court, such as the constitutionality of the federal bankruptcy laws challenged by Plaintiff.  However, this Court reviews the bankruptcy court's factual findings for clear error.  <u>Rifino</u>, 245 F.3d at 1088.  To the extent Plaintiff's appeal challenges the bankruptcy court's rulings regarding discovery and scheduling matters, the Court applies an abuse of discretion standard of review.  <u>See</u> <u>Wharton v. Calderon</u>, 127 F.3d 1201, 1205 (9th Cir. 1997); <u>Janicki v. Logging Co. v. Mateer</u>, 42 F.3d 561, 563 (9th Cir. 1994).

**II.    The Bankruptcy Court Did Not Err In Its Undue Hardship Determination**

By statute, Congress has provided that student loans are not dischargeable in bankruptcy.  11 U.S.C. § 523(a)(8); <u>see</u> <u>Tenn. Student Assistance Corp. v. Hood</u>, 541 U.S. 440, 450 (2004).  However, section 523(a)(8) provides that a debtor may obtain a discharge of his student loans if the debtor establishes that requiring him to repay the loans would impose an "undue hardship" on the debtor.  11 U.S.C. § 523(a)(8).  To determine whether a debtor has established "undue hardship" within the meaning of the statute, the Ninth Circuit employs the test originally set forth in <u>Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)</u>, 831 F.2d 395 (2d Cir. 1987).  <u>See</u> <u>United Student Aid Funds v. Pena (In re Pena)</u>, 155 F.3d 1108, 1111 (9th Cir. 1998).  Under the <u>Brunner</u> test, the debtor must establish that (1) he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) that

1    additional circumstances exist indicating that this state of affairs is likely to persist for a

2    significant portion of the repayment period of the student loans; and (3) that the debtor has

3    made good faith efforts to repay the loans.  Pena, 155 F.3d at 1111.  The debtor bears the

4    burden to present evidence establishing each of the three elements of the Brunner test.

5    Rifino, 245 F.3d at 1088.  "If the debtor fails to satisfy any one of the[] requirements, the

6    bankruptcy court's inquiry must end there, with a finding of no dischargeability."  Id.

7         Here, the bankruptcy court concluded that Plaintiff satisfied the first element of the

8    Brunner test but failed to establish the second or third elements.  Plaintiff asserts that the

9    bankruptcy court's conclusion was erroneous.  For the following reasons, the Court

10   concludes that Plaintiff failed to establish that being forced to repay his student loans would

11   constitute an undue hardship under the law.

12        Starting with the second prong of the Brunner test, the Court concludes that Plaintiff

13   failed to establish additional circumstances indicating that Plaintiff's inability to maintain a

14   minimal standard of living if forced to repay the loans is likely to persist for a significant

15   portion of the repayment period.  See Pena, 155 F.3d at 1111.  "Exceptional circumstances"

16   within the meaning of the Brunner test are circumstances that "demonstrate insurmountable

17   barriers to the debtor's financial recovery and ability to repay the student loan now and for

18   a substantial portion of the repayment period."  In re Carnduff, 367 B.R. 120, 128 (9th Cir.

19   B.A.P. 2007).  The purpose of the second prong of the Brunner test is to effectuate

20   Congress's intent "to prohibit a 'garden-variety debtor' from discharging student loans."  In

21   re Nys, 446 F.3d 938 (9th Cir. 2006) (quoting Rifino, 245 F.3d at 1087).  "What separates a

22   garden-variety debtor from a debtor who can show undue hardship is the realistic

23   possibility that a garden-variety debtor could improve [his] financial situation in the

24   future."  In re Nys, 446 F.3d at 944.  Accordingly, "[t]o prove undue hardship, the

25   circumstances must indicate that the debtor cannot reasonably be expected to increase [his]

26   income and make payments for a substantial portion of the loan's repayment period."  In re

27   Nys, 446 F.3d at 944 n.7.

28        Here, based on the evidence, the Court concludes that Plaintiff failed to establish the

existence of "insurmountable barriers to the debtor's financial recovery and ability to repay the student loan." In re Carnduff, 367 B.R. at 128. To the contrary, the evidence indicates that Plaintiff is well educated and possesses qualifications for numerous jobs, and that Plaintiff can "reasonably be expected to increase [his] income." In re Nys, 446 F.3d at 944 n.7; see In re Birrane, 287 B.R. 490, 495 (9th Cir. B.A.P. 2002) (courts consider whether it would be "unconscionable" to require the debtor to take steps to earn more income or reduce expenses in order to make loan payments); see also United Student Aid Funds v. Nascimento (In re Nascimento), 241 B.R. 440, 445 (9th Cir. B.A.P. 1999). The evidence demonstrates that Plaintiff has been employed in a variety of jobs during the repayment period. Although Plaintiff has apparently used little of the income derived from those jobs to repay the student loans at issue, the record does not demonstrate that Plaintiff lacks the ability to work and earn sufficient income to make payments on the loan. During much of the repayment period, Plaintiff chose to seek deferments and forbearances of his student loans, and later devoted himself to obtaining a law degree. Plaintiff has demonstrated a capacity to work in a variety of fields in the past, and the Court concludes that no evidence supports the conclusion that he is unable to continue doing so at present or in the future. See Goulet v. Educational Credit Management Corp., 284 F.3d 773, 779 (7th Cir. 2002) ("The record does not demonstrate that he lacks the capacity to work, only that he does not seem anxious to do so."). In summary, based on its review of all the evidence in this case, the Court concludes that Plaintiff failed to establish the existence of "insurmountable barriers" to his financial recovery and ability to repay his student loans. In re Carnduff, 367 B.R. at 128. Accordingly, the Court concludes that the bankruptcy court did not err in determining that Plaintiff failed to satisfy the second prong of the Brunner standard.

Turning to the third element of the Brunner test, the Court concludes that Plaintiff failed to establish that he made good faith efforts to repay his student loan debt. The purpose of this requirement is to effectuate the intent of Congress that the repayment of student loans is required in all but the most extreme cases. See Pena, 155 F.3d at 1111 (section 523(a)(8) intended to "forestall students . . . from abusing the bankruptcy system").

1   Courts frequently examine factors such as the debtor's efforts in obtaining employment,

2   maximizing income and minimizing expenses, and/or negotiating alternative repayment

3   arrangements.  See Educ. Credit Management Corp. v. Mason, 464 F.3d 878, 885 (9th Cir.

4   2006); In re Birrane, 287 B.R. at 500.  Here, the record is simply devoid of evidence

5   demonstrating that Plaintiff made good faith efforts to obtain work, maximize his income

6   and/or minimize his expenses, and make payments on the loan or seek alternative

7   repayment programs.  During several periods of time throughout the repayment period,

8   Plaintiff has earned income but has chosen to pay other debts and made little to no effort at

9   making payments on his student loans.  Throughout other times during the repayment

10  period, instead of making good faith efforts to repay the student loans, Plaintiff continued

11  his education by attending law school and thereafter devoted several years pursuing

12  lawsuits aimed at eliminating his student loan debt.  In sum, based on all the evidence, the

13  Court concludes that Plaintiff failed his burden to establish that he made good faith efforts

14  to repay his student loan debt.  See Pena, 155 F.3d at 1111.

15      For the reasons discussed above, the Court concludes that Plaintiff failed to establish

16  either the second or third prong of the Brunner test for an "undue hardship" discharge of

17  Plaintiff's student loans.  Pena, 155 F.3d at 1111.  Accordingly, the Court affirms the

18  decision of the bankruptcy court.

19  **III.    Plaintiff's Constitutional Challenges**

20      Plaintiff challenges the constitutionality of 11 U.S.C. § 523(a)(8) and 20 U.S.C.

21  § 1091a.  Although it is doubtful that Plaintiff properly preserved these issues for appeal,

22  the Court has liberally construed the procedural record in recognition of Plaintiff's pro se

23  status.  For the reasons that follow, the Court concludes that both provisions are

24  constitutional.

25      **A.     11 U.S.C. § 523(a)(8)**

26      Simultaneously with seeking an "undue hardship" discharge pursuant to § 523(a)(8),

27  Plaintiff has challenged the statute's constitutionality.  Plaintiff asserts that the statute

28  violates the equal protection and substantive due process guarantees of the Fifth

1  Amendment to the United States Constitution.  Plaintiff also asserts a variety of additional

2  challenges to the statute's validity, all of which the Court concludes lack merit.

3  **1.    Equal Protection and Due Process**

4  The equal protection and substantive due process provisions of the Constitution

5  prohibit government from treating similarly situated individuals differently, and from

6  imposing burdens on important rights without sufficient justification.  See City of Cleburne

7  v. Cleburne Living Center,473 U.S. 432, 439 (1985); San Antonio Indep. Sch. Dist. v.

8  Rodriguez, 411 U.S. 1, 40 (1973).  The degree of judicial scrutiny to which a challenged

9  law will be subjected, however, depends on the type of classification and/or the importance

10  of the right burdened.  "Absent a suspect classification or the infringement of a

11  fundamental right," a constitutional violation occurs only if the challenged provision "bears

12  no rational relationship to a legitimate governmental purpose."  Parks v. Watson, 716 F.2d

13  646, 654 (9th Cir. 1983); see Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 457-58

14  (1988).

15  Here, the Court concludes that § 523(a)(8) neither infringes a fundamental right nor

16  discriminates against a suspect class.  The Court concludes, first, that there exists no

17  "fundamental right" to a discharge in bankruptcy.  That ability to obtain a discharge is

18  granted by statute, and the Supreme Court has clearly stated that "[t]here is no

19  constitutional right to obtain a discharge of one's debts."  United States v. Kras, 409 U.S.

20  434, 446 (1973).  Additionally, the Court rejects Plaintiff's alternative arguments that

21  § 523(a)(8) is subject to strict scrutiny because it burdens his "right" to the basic necessities

22  of life.  The Supreme Court has not recognized such a broadly phrased fundamental right.

23  The Supreme Court has, however, cautioned that in the context of legislation that affects

24  "the most basic economic needs of impoverished human beings," the equal protection

25  clause "gives the federal courts no power to impose . . . their views of what constitutes wise

26  economic or social policy."  Dandridge v. Williams, 397 U.S. 471, 486 (1970).  Here,

27  Congress drafted the "undue hardship" exception to § 523(a)(8) so that, unlike most people,

28  extremely impoverished individuals can receive a discharge of student loan debt.  See

1   Collier on Bankruptcy § 523.14.  The Court rejects Plaintiff's reasoning that the provision

2   is unconstitutional because it fails to achieve that purpose as broadly as Plaintiff would

3   prefer.  Accordingly, the Court concludes that § 523(a)(8) does not infringe a fundamental

4   right.

5        The Court also concludes that § 523(a)(8) does not discriminate against a suspect

6   class.  First, the indigent are not a suspect class, see Kadrmas v. Dickinson Pub. Sch., 487

7   U.S. at 458; Harris v. McRae, 448 U.S. 297, 322-23 (1980), and even if they were, the

8   provision at issue provides a benefit to impoverished individuals, as noted above.  Second,

9   contrary to Plaintiff's arguments, the Court concludes that § 523(a)(8) does not

10  discriminate against racial minorities.  The statute does not reference race in any way, and

11  the Court concludes that Plaintiff's arguments regarding the statute's purported disparate

12  impact on racial minorities fall far short of establishing that the statute violates the equal

13  protection clause.  Washington v. Davis, 426 U.S. 229, 242 (1976) (facially neutral law that

14  serves "ends otherwise within the power of government to pursue" not invalid under the

15  equal protection clause "simply because it may affect a greater proportion of one race than

16  of another").  In order to qualify for strict scrutiny, "the invidious quality of a law claimed

17  to be racially discriminatory must ultimately be traced to a racially discriminatory

18  purpose." Id. at 240.  Ordinarily, statistical evidence of disparate impact is insufficient to

19  show such discriminatory purpose.  E.g., Arlington Heights v. Metro. Housing Dev. Corp.,

20  429 U.S. 252, 266 (1977).  Even if this Court accepted as true and admissible[3] the statistics

21  that Plaintiff has cited, the Court concludes that they are insufficient to show a

22  discriminatory purpose.  Accordingly, this Court reviews the constitutionality of §

23  523(a)(8) pursuant to rational basis review.  See Parks v. Watson, 716 F.2d at 654.

24       Under the rational basis standard of review, "legislation is presumed to be valid and

25  will be sustained if the classification drawn by the statute is rationally related to a

26  legitimate state interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28       [3]   Plaintiff first raised this argument, and submitted purported evidence supporting his
     theory, in Plaintiff's supplemental brief on summary judgment, see Bk. Doc. No. 158, which the
     bankruptcy court struck from the record.  (Bk. Doc. No. 190.)

1   (1985).  As the party challenging the statute's constitutionality, Plaintiff bears the burden of

2   negating every conceivable rational basis, "whether or not the basis has a foundation in the

3   record."  FCC v. Beach Communications, Inc., 508 U.S. 307, 314-15 (1993).

4        Here, the Court concludes that a rational basis exists supporting § 523(a)(8)

5   disparate treatment of holders of student loan debt, who (absent "undue hardship") are not

6   eligible for the bankruptcy discharge that holders of other types of debt may receive.

7   Congress placed limits on the discharge of student loan debt because the rising rate of

8   defaults on student loans was threatening the solvency of the federal student loan program.

9   See In re Pelkowski, 990 F.2d 737, 742 (3d Cir. 1993).  With the original exception and

10  subsequent amendments broadening the scope of the exception, Congress sought "to

11  prevent abuses in and protect the solvency of the educational loan programs."  In re

12  Merchant, 958 F.2d 738, 742 (6th Cir. 1992).  The Court concludes that Plaintiff fails to

13  satisfy his burden to establish that § 523(a)(8) is not rationally related to a legitimate

14  government interest (for example, protecting the solvency of the student loan program).

15  Accordingly, Plaintiff's equal protection and substantive due process challenges fail with

16  respect to § 523(a)(8).

17            **2.        Other Constitutional Arguments**

18       Additionally, Plaintiff challenges the constitutionality of § 523(a)(8) on the grounds

19  that it violates the doctrine of "mutuality of contract," that it is "unconscionable" and void

20  for vagueness, that it is impermissible "retroactive" legislation, and that the government has

21  interfered with his ability to repay his loan.  The Court concludes that all of these

22  arguments lack legal merit, and that the last argument lacks factual support in the record.

23       First, Plaintiff fails to cite to a provision of the Constitution that renders a loan

24  contract unenforceable on the grounds that the debtor and creditor do not have access to the

25  same remedy.  The common law of contracts provides no support for such an argument.

26  See Restatement (Second) of Contracts § 363.  Second, the Court rejects Plaintiff's

27  argument that Congress's decision to impose collection costs and penalties render his

28  student loan contract unconscionable.

1    Third, the Court concludes that § 523(a)(8) does not constitute impermissible

2    retroactive legislation.   When originally enacted, § 523(a)(8) provided that student loan

3    debts were nondischargeable for a period of five years beginning on the date that the

4    repayment period commenced.  See Education Amendments of 1976, Pub. L. No. 94-482,

5    § 127(a), 90 Stat. 2081.  In 1990, Congress extended to seven years the period of

6    nondischargeability and, in 1998, Congress provided for an indefinite period of

7    nondischargeability.

8    Legislation is impermissibly retroactive when it "takes away or impairs vested rights

9    acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a

10   new disability, in respect to transactions or considerations already past."  Landgraf v. USI

11   Film Products, 511 U.S. 244, 269 (1994).  Here, the Court concludes that the amendments

12   to § 523(a)(8) altered no rights that had vested in Plaintiff.  To the extent there exists a

13   "right" to a discharge, see Kras, 409 U.S. at 446, the Court concludes that the right does not

14   vest until the date of discharge.  See Hudson County Welfare Dept. v. Roedel, 34 B.R. 689,

15   694 (D.N.J. 1983) ("Since the right to discharge is entirely a creation of statute, a debtor

16   who has not yet received his discharge under the statute has no vested right in having the

17   law remain as it was at the time he filed his petition.").  Moreover, even if the law at issue

18   was retroactive, the Constitution only forbids the retroactive application of penal legislation

19   and civil legislation that is so punitive as to be quasi-penal.  Smith v. Doe, 538 U.S. 84, 92

20   (2003).  The Court concludes that § 523(a)(8) does not qualify as a such a law.

21   The Court also concludes that § 523(a)(8) is not void for vagueness.  Outside of the

22   context of criminal laws or laws that relate to freedom of expression under the First

23   Amendment, an ordinary civil statute is only susceptible to challenge on vagueness grounds

24   if it is "substantially incomprehensible."  Doe v. Staples, 706 F.2d 985, 988 (6th Cir. 1983);

25   see Craft v. Natl. Park Serv., 34 F.3d 918, 922 (9th Cir. 1994) (standard for evaluating civil

26   sanctions more lenient than standard for evaluating criminal laws).  The Court concludes

27   that the "undue hardship" standard of § 523(a)(8) is not "substantially incomprehensible."

28   Accordingly, Plaintiff's void for vagueness challenge fails.

1    Finally, the Court rejects Plaintiff's argument that the government interfered with

2  Plaintiff's ability to repay his loan as lacking in legal merit and factual support in the

3  record.  Although Plaintiff has made numerous allegations regarding his legal dispute with

4  the California Commission on Teacher Credentialing, which the Court has discussed above

5  to the extent they relate to Plaintiff's ability to obtain an "undue hardship" discharge of his

6  student loans, Plaintiff cites no authority supporting the proposition that the Commission's

7  actions have any bearing on the validity of a federal statute.

8    In sum, the Court rejects Plaintiff's challenges (constitutional or otherwise) to the

9  validity of § 523(a)(8).

10      **B.    20 U.S.C. § 1091**

11    Plaintiff asserts that his loan increased to its present amount by virtue of numerous

12  fees and penalties, which Plaintiff contends violate the "excessive fines" clause of the

13  Eighth Amendment.  The Court concludes that this argument lacks merit.  The Eighth

14  Amendment's excessive fines clause limits the government's ability "to extract payments

15  . . . as punishment for some offense."  Austin v. United States, 509 U.S. 602, 609-10 (1993)

16  (emphasis in original).  Accordingly, in order to successfully challenge a statute on Eighth

17  Amendment grounds, an individual must first establish that any "fine" or fee constitutes

18  "punishment."  See id.  Courts examine the actual purposes served by the fine, not the

19  fine's impact, to determine whether a fine is remedial or punitive.  See United States v.

20  Halper, 490 U.S. 435, 447 n. 7 (1989) (whether a fine constitutes punishment is not

21  "determined from the defendant's perspective").

22    Here, the Court concludes that the collection costs charged to debtors in default by

23  § 1091a and its implementing regulations do not serve punitive purposes.  The Court

24  concludes that the purpose of § 1091 was to "reduce collection costs," not to punish debtors

25  in default.  See H.R. Rep. No. 99-383, at 41 (1985).  The statute was enacted because

26  Congress concluded that "the borrowers themselves, not the taxpayers, should bear the

27  reasonable costs of collecting student loans in default."  Black v. Educational Credit

28  Management Corp., 459 F.3dd 796, 800 (7th Cir. 2006).  Accordingly, since the costs and

1   fees imposed and/or permitted by § 1091a do not serve punitive purposes, the statute does

2   not implicate the Eighth Amendment.  Even assuming that a civil statute regarding loan

3   collection fees implicated the Eighth Amendment, the Court concludes based on the record

4   in this case that Plaintiff failed to establish that any fine or fee is so "grossly

5   disproportionate" to the offense as to be excessive within the meaning of the Eighth

6   Amendment.  See United States v. Bajakajian, 524 U.S. 321, 336 (1998).

7   **IV.    Plaintiff's Additional Arguments**

8           Plaintiff challenges the propriety of several discovery rulings, procedural decisions

9   and scheduling orders of the bankruptcy court.  Plaintiff also contends that the bankruptcy

10  court erroneously denied Plaintiff's requests to certify a class, to grant injunctive relief and

11  to interplead the United States Secretary of Education.  See Coleman v. American Red

12  Cross, 23 F.3d 1091, 1096 (6th Cir. 1994) ("The law is well settled that an appeal from a

13  final judgment draws into question all prior non-final rulings and orders.").  For the reasons

14  discussed below, the Court affirms the challenged decisions of the bankruptcy court.

15          First, the Court concludes that the bankruptcy court's discovery rulings and

16  scheduling orders did not constitute an abuse of discretion.  Wharton v. Calderon, 127 F.3d

17  1201, 1205 (9th Cir. 1997) (discovery orders reviewed for abuse of discretion); Janicki v.

18  Logging Co. v. Mateer, 42 F.3d 561, 563 (9th Cir. 1994) (abuse of discretion standard

19  applies to decisions regarding pretrial scheduling orders pursuant to Fed. R. Civ. P. 16);

20  Kyle v. Campbell Soup Co., 28 F.3d 928, 930 (9th Cir. 1994) (extensions of time under

21  Fed. R. Civ. P. 6(b) reviewed for abuse of discretion).  Although a substantial portion of

22  Plaintiff's briefing is devoted to allegations of error in connection with the bankruptcy

23  court's discovery and procedural rulings, Plaintiff's arguments lack legal or factual support

24  and instead rely on the theory that any ruling adverse to Plaintiff was erroneous.  The Court

25  has conducted its own review of the record on appeal and concludes that the bankruptcy

26  court did not abuse its discretion.

27          Next, the Court rejects Plaintiff's contention that the bankruptcy court's discovery

28  and procedural rulings violated Plaintiff's "basic procedural due process rights."  To

1    establish a violation of procedural due process, a plaintiff must show (1) the existence of a

2    protected liberty or property interest and (2) the deprivation of that liberty or property

3    interest without sufficient notice and opportunity to be heard.  See Clements v. Airport

4    Authority of Washoe County, 69 F.3d 321, 331 (9th Cir. 1995).  The Court concludes that

5    Plaintiff establishes neither of these requirements with respect to the interlocutory and

6    procedural decisions of the bankruptcy court.

7        Next, the Court concludes that the bankruptcy court did not err in its decision to

8    deny Plaintiff's request for class certification.  The Ninth Circuit has stated that a court's

9    "decision to certify a class is subject to very limited review and will be reversed only upon

10   a strong showing that the district court's decision was a clear abuse of discretion."  Duke v.

11   Wal-Mart, Inc., 509 F.3d 1168, 1175 (9th Cir. 2007).  In this appeal to the district court, the

12   Court concludes that this is the appropriate standard by which to review the bankruptcy's

13   decision to deny class certification.  The Court affirms the decision of the bankruptcy court

14   to deny class certification here.  Plaintiff's complaint did not plead any allegations

15   regarding a class, and Plaintiff requested later in the litigation that the bankruptcy court

16   certify a class, based on Plaintiff's assertion that seven other student loan debtors faced

17   "the exact same problems" of Plaintiff.  (See Bk. Doc. Nos. 127, 134, 135-139, 157.)  The

18   Court concludes that Plaintiff failed to satisfy the necessary requirements under the law for

19   class certification.  See Fed. R. Civ. P. 23.  The Court notes that Plaintiff, who has

20   proceeded pro se, would have a particularly difficult time establishing that Plaintiff would

21   "adequately protect the interests" of the putative class.  Fed. R. Civ. P. 23(a)(4); see Fymbo

22   v. State Farm Fire & Casualty Co., 213 F.3d 1320, 1321 (10th Cir. 2000) (pro se litigants

23   prohibited from representing a class).

24       Finally, the Court rejects Plaintiff's contention that the bankruptcy court engaged in

25   improper ex parte communications with the United States.  Plaintiff contends that this

26   occurred when the bankruptcy court's courtroom deputy contacted an Assistant United

27   States Attorney to schedule a hearing for Plaintiff's motion for summary judgment.  The

28   Court concludes that a phone call from a member of a judge's staff regarding an

08cv414

administrative matter does not constitute an impermissible ex parte communication. <u>See</u>

<u>Drobny v. CIR</u>, 113 F.3d 670, 680 (7th Cir. 1997). Plaintiff does not allege, much less

prove, that any improper communication occurred regarding the merits of a pending case.

<u>See</u> <u>id.</u>

<u>**Conclusion**</u>

For the foregoing reasons, the Court affirms in its entirety the decision of the

bankruptcy court. The Clerk of Court shall close this case.

IT IS SO ORDERED.

DATED: August 15, 2008

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.